H. K. BAILEY, *Petitioner*, v. J. C. VAN PELT, AS SHERIFF OF ESCAMBIA COUNTY, STATE OF FLORIDA, *Respondent.*

Opinion Filed August 12, 1919.

Petition for rehearing denied August 18, 1919.

1. When authority is given by statute to accomplish a stated governmental purpose, there is also given by implication authority to do everything necessary to accomplish the purpose that is not a violation of law or public policy.

2. The authority given to the counties severally to have local option · elections to determine whether there shall be compulsory systematic tick eradication work or compulsory dipping of cattle in the counties may be accomplished by holding elections called by the county commissioners under any system prescribed for holding elections of that nature, in which all the "qualified electors" of the county are authorized to vote.

3. In order to justify the courts in declaring invalid as a delegation of legislative power a· statute conferring particular duties or authority upon administrative officers it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a *power* that appertains exclusively to the legislative department, and the conferring of it is not warranted by the provisions of the constitution.

4. The legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to regulations under the police power, since the complex and ever-changing conditions that attend and affect such matters make it impracticable

for the legislature to prescribe all necessary rules and regulations.

5. Authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all the departments.

6. The exercise of some authority, discretion or judgment may be incident or necessary to the performance of administrative or ministerial duties; but such authority, discretion or judgment is subject to judicial review; and it is not among the powers of government that the constitution separates into departments.

7. The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must, therefore, be subject of inquiry and determination outside of the halls of legislation.

8. The authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administartive to a legislative character because the violation thereof is punished as a public offense.

9. All property rights are held and enjoyed subject to the fair exercise of the State's police power to establish regulations that are reasonably necessary to secure the general welfare of the State.

10. The wisdom and necessity, as well as the policy, of a statute are authoritatively by the legislature.

11. The statute and not the administrative regulation defines the offenses and imposes the penalties under Chapter 7345, Acts of 1917. Such statute provides a sufficient primary standard for authorized administrative regulations; no arbitrary authority is conferred upon the administrative board; the validity and reasonableness of permissible administrative regulations are subject to judicial review; and the statute does not delegate legislative power in violation of the constitution. The reasonableness of the administration of the statute is subject to review by the courts.

A Writ of Error to the Court of Record for Escambia County; C. M. Jones, Judge.

Judgment affirmed.

*Walter Kehoe, W. C. Hodges* and *Fred H. Davis,* for Petitioner;

*Van C. Swearingen,* Attorney General; *D. Stuart Gillis,* Assistant, and *Fred T. Myers,* for Respondent.

WHITFIELD, J.—In a criminal prosecution Bailey was charged with having "knowingly and wilfully failed to keep and perform certain rules and regulations made and promulgated by the Live Stock Sanitary Board of the State of Florida, to-wit: as owner in charge of cattle and premises, and having been served with official written notice he, the said H. K. Bailey, failed to thoroughly and properly dip said cattle regularly every fourteen (14) days until such time as it is ascertained by regular inspection and dipping that the cattle and premises are free of ticks, against the form of the Statute in such case made and provided," etc.

On writ of habeas corpus in the Court of Record for Es-

cambia County, the defendant sought a discharge from custody under the charge on the grounds that the statute upon which the information is predicated is inoperative in Escambia County because for stated reasons no legal election has been held in said county upon the result of which the statutory provision in question here could become effective in that county, and that the statutory provision under which the offense is alleged is an unlawful delegation of legislative power to administrative officers. The court remanded the petitioner and on writ of error allowed and taken the constitutionality of the statute and the validity of the election held in Escambia County thereunder are argued here.

The "agreed state of facts" stipulates that upon a petition signed by one-fourth of the registered voters of Escambia County asking that an election be held in said county to determine whether or not compulsory systematic tick eradication work, or compulsory cattle dipping should be put into effect and carried on in the county of Escambia, State of Florida; the county commissioners of the county "called an election to be had in Escambia County, Florida, to determine whether or not compulsory systematic tick eradication work, or compulsory dipping of cattle should be provided for and carried on in said county;" that "it is expressly agreed and admitted by the Petitioner that three (3) inspectors and a clerk were designated to hold and conduct said election in each precinct in the county; that each of such persons so designated were qualified electors of Escambia County, State of Florida, and were, on said day, appointed as inspectors and clerks at said election called by the County Commissioners and ordered to be held on April 19th, 1918, and that the inspectors and clerks, so designated and appointed, did actually

serve and act in the respective capacities for which they were appointed and designated at said election of April 19, 1918, that a canvass of the votes cast was made by the county canvassing board and the county commissioners; that the result of the election was 676 votes for and 482 votes against compulsory systematic tick eradication work, or compulsory dipping of cattle in Escambia County, Florida;" "that about the 1st day of September, A. D. 1917, the Live Stock Sanitary Board of the State of Florida, under and by authority of Chapter 7345, Laws of Florida, 1917, did make and promulgate certain rules and regulations concerning the dipping of cattle in Escambia County, State of Florida, one of said rules and regulations being in words and figures as follows:

" 'When owners, custodians, or persons, in charge of cattle and premises, are served with official verbal or written notice said cattle shall be thoroughly and properly dipped regularly every fourteen (14) days under official supervision until such time as it is ascertained by regular inspection and dipping that the cattle and premises are free from ticks.'

"And another of said rules and regulations being in words and figures as follows:

" 'All owners, custodians, or persons in charge of cattle, after being served with notice and receiving instructions concerning the methods of systematic tick eradication, shall dip such cattle at the time and place designated by official notice. Owners, custodians, or persons in charge of cattle or premises, failing to regularly and systematically dip such cattle in accordance with methods established in the county, shall be liable to prosecution for each offense.'

"That each of said rules and regulations were duly pub-

lished and promulgated and the Petitioner herein given personal notice of same.

"That Petitioner is and was for a long period of time (more than one year) before the making and promulgation of said rules and regulations above set out, the owner, custodian and person in charge of a large herd of cattle; about two hundred (200) head, all of same being and ranging wholly in Escambia County, State of Florida.

"That on or about the 1st day of April, 1919, the petitioner was personally served with verbal and written notice that his said cattle should be dipped regularly every fourteen (14) days under official supervision until such time as it should be ascertained by regular inspection and dipping that the cattle and premises were free from tick.

"That Petitioner then and there being the owner, custodian and the person in charge of a large herd of cattle. to-wit: about Two Hundred (200) Head, said cattle being wholly within Escambia County, State of Florida, was served with verbal and written notice and received instructions from the Live Stock Sanitary Board and its accredited representative, Dr. W. C. Brown, State Live Stock Inspector, concerning the method of systematic tick eradication, and then and there received instructions and directions, written and verbal, from the said Dr. W. C. Brown, State Live Stock Inspector, to dip said cattle in accordance with the rules and regulations above set out in full, the time and place of and for said dipping being designated in said written and verbal notice and instructions.

"That Petitioner, H. K. Bailey, notwithstanding said rules and regulations and notwithstanding the notices and instructions aforesaid given him, which notices and

instructions Petitioner here admits he did receive from the Live Stock Sanitary Board of the State of Florida, and its accredited representative, Dr. W. C. Brown, State Live Stock Inspector for Escambia County, has knowingly and wilfully violated and failed to keep or perform the said rules and regulations before set out herein and has knowingly and wilfully failed and refused to dip any of his said cattle regularly every fourteen (14) days under the official supervision until said time as it is ascertained by regular inspection that the cattle and premises are free from cattle ticks."

The pertinent portions of the statute are as follows:

"CHAPTER 7345—(No. 87).

"AN ACT to Create the State Live Stock Sanitary Board and to Prescribe Its Membership, Powers and Duties, and Fix the Compensation for the Services of Its Members and to Vest in Said Board the Authority to Provide for the Prevention, Suppression and Control of Dangerous Communicable, Contagious, Infectious and Other Diseases of Cattle, Hogs and Other Domestic Animals, and to Establish, Maintain, and Enforce Quarantines, to Prevent the Introduction or Spread of Infectious, Contagious and Communicable Diseases Among Such Animals, and to Adopt and to Enforce Rules and Regulations Regarding Any and All Said Matters, and to Give Said Board Power and Authority in Respect Thereto, and to Authorize County Commissioners to Appropriate and Expend Funds for the Work of Tick Eradication and Hog Cholera Control, and to Provide for the Appointment of a State Veterinarian and Other Agents and Employees of Said

Board, and to Fix the Powers Thereof, and to Prescribe Punishment for Violations of this Act and of the Rules and Regulations of Said Board, and to Make the Necessary Appropriation for Carrying Out the Provisions of This Act.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1. There is hereby created and established a Board to be known and designated as the State Live Stock Sanitary Board, which shall be composed of the Commissioner of Agriculture, the Superintendent of Public Instruction, the State Treasurer, and two other members who shall be appointed by the Governor. The Commissioner of Agriculture shall be ex-officio President of said Board. The members of said Board who are appointed by the Governor shall hold office for four years and until their successors shall have been duly appointed and qualified. A majority of the members of said Board shall constitute a quorum for all purposes. * * * .

"Sec. 4. The Board shall collect and preserve information as to infectious, contagious, communicable and other diseases of cattle, hogs and other domestic animals, and their origin, locality, nature, appearance, manner of dissemination or communication and methods for treatment, prevention, suppression, eradication, quarantine and control thereof, and shall take such measures as in the judgment of said Board may be necessary or proper for the control, suppression, eradication and prevention of the spread thereof, and to protect cattle, hogs and other domestic animals therefrom in the State of Florida, and to quarantine all such animals as said Board shall find or have reason to believe to be affected with

or exposed to any such disease or diseases; provided, however, that no quarantine shall be enforced against the movement of tick-infested cattle from any tick-infested area in this State into any other tick-infested area in this State, or area in which systematic tick eradication work is not being carried on under the direction of the State Live Stock Sanitary Board. Provided, that the County Commissioners of no county shall appropriate money for dipping vats or co-operation with State or Federal authorities or both in excess of two (2) mills per annum on the assessed valuation of the county, and that no compulsory systematic tick eradication work or compulsory dipping of cattle shall be carried on in any county or district of the State by or with the co-operation of the State Live Stock Sanitary Board, any Board of County Commissioners, or any State veterinary, before an election shall have been held in the county or district in which the work is to be carried on and a majority of the qualified electors voting in said election have declared in favor of compulsory systematic tick eradication work. or compulsory cattle dipping. Such election may be held at any general election according to the laws and procedure of general elections, or at a special election which shall be called and held according to the laws governing special elections.

"Sec. 5. Said Board shall have the power and it shall be its duty from time to time to make, promulgate and enforce rules and regulations for carrying out the provisions and requirements of this Act and power to establish, maintain and enforce quarantines in any of the counties, or parts of counties, or any place in the State of Florida, or the whole of the State, and to prescribe quarantine districts, regions or areas, their locations and boundaries,

and to restrict, regulate or prohibit the movement or transportation of cattle, hogs and other domestic animals into or out of the same, when deemed by the said Board necessary to prevent the spread or dissemination of contagious, infectious and communicable diseases among cattle, hogs and other domestic animals. Said Board shall publish in such newspapers of this State, as the said Board may select, notices of establishment of such quarantine lines, and such quarantine rules and regulations, and place public notices of such quarantine lines, rules and regulations at court houses and on public highways and other public places. * * * .

"Sec. 13. It shall be the duty of the said State Live Stock Sanitary Board to see that the provisions of this Act are carried out, and said Board may require the State's Attorney or county solicitor or other prosecuting officer in any circuit or county to institute suits, civil or criminal, for the purpose of enforcing or carrying out the terms of this Act and the rules of said Board and preventing violations thereof, and any person or officer charged with any duty under this Act may be compelled to perform the same by mandamus, injunction or other extraordinary remedy upon the application and in the name of the said Board. * * * .

"Sec. 15. That for all purposes this Act and any rules and regulations of said Board adopted hereunder, cattle, hogs or other domestic animals which are infected with insects, parasites or other agencies or means by which disease is communicated shall be considered and dealt with as affected with a contagious, infections, or communicable disease. * * * .

"Sec. 19. Any person who shall knowingly and wilfully violate or fail to keep or perform any rule or reg-

ulation of said Board shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not exceeding One Thousand Dollars ($1,000.00), or by imprisonment not exceeding one year, or by both such fine and imprisonment.    *    *    *    .

"Sec. 21.   All owners, custodians or persons in charge of live stock which have been quarantined, and all owners, tenants, custodians or persons in charge, or in possession of any lot, yard, pasture, field, stall, enclosure, barn or building, which has been quarantined under this Act shall comply with rules and regulations prescribed by the State Live Stock Sanitary Board within a reasonable time, and clean and disinfect such live stock or premises, and shall destroy carriers, or cause, or means of communicating any contagious, infectious or communicable diseases affecting such live stock, or infecting such premises.   Any person who shall injure, destroy or attempt to destroy any property or equipment or facilities owned by any individual, firm, company, corporation, or county or any property or equipment or facilities owned by the State of Florida, used or intended to be used in the prevention, control, suppression, or eradication of any infectious, contagious or communicable diseases affecting cattle, hogs or other domestic animals, shall be deemed guilty of a misdemeanor and upon conviction shall be punished for each and every offense by a fine not exceeding One Thousand Dollars ($1,000.00) or imprisonment not exceeding one year, or by both such fine and imprisonment in the discretion of the Court."

In section 4 of the statute it is provided "that no compulsory systematic tick eradication work or compulsory dipping of cattle shall be carried on in any county or district of the State by or with the co-operation of the

State Live Stock Sanitary Board, any Board of County Commissioners, or any State Veterinary, before an election shall have been held in the county or district in which the work is to be carried on and a majority of the qualified electors voting in said election have declared in favor of compulsory systematic tick eradication work, or compulsory cattle dipping. Such election may be held at any general election according to the laws and procedure of general elections, or at a special election which shall be called and held according to the laws governing special elections."

The purpose of the statute is to have each county determine for itself by a vote of the qualified electors therein whether "compulsory systematic tick eradication work or compulsory dipping of cattle shall be carried on in the county" under the statute; and the statute should be interpreted and applied so as to effectuate its purpose. When authority is given by statute to accomplish a stated governmental purpose, there is also given by implication authority to do everything necessary to accomplish the purpose that is not a violation of law or public policy. The authority given to the counties severally to have local option elections to determine whether there shall be compulsory systematic tick eradication work or compulsory dipping of cattle in the counties may be accomplished by holding elections under any system prescribed for holding elections of that nature, in which all the "qualified electors" of the county are authorized to vote.

The provision that the elections "may be held * * * at a special election which shall be called and held according to the laws governing special elections," does not necessarily refer to the special elections that may be held to fill the vacancies in the membership of the legislature

or of the Federal House of Representatives, which particular special elections are held under a proclamation of the Governor. Secs. 175, 177 Gen. Stats. 1906.

Under the constitution of 1885, no special elections are held to fill vacancies in elective judicial, executory, administrative or ministerial officers of the State and counties. Secs. 6 and 9, Art. xviii, Sec, 301 Gen. Stats. 1906.

At the time this statute was enacted, the County Commissioners were authorized to call elections in their counties to determine whether certain laws should be put into operation in the counties, and in such an election all the qualified electors of the county were authorized to vote. This system of conducting elections is more analogous to the elections contemplated by the statute under consideration. The elections were in their nature "special elections," and as the conferred right of the electors of a county to have an election under the staute carried by implication the right to use any means not violative of law or public policy, and as the County Commissioners are the governing body of a county who had authority to call special elections analogous to those under this law, in which the same classes of electors participate, it is reasonable to assume that this statute contemplates that the elections thereunder should "be called and held according to the laws governing special elections," that the County Commissioners were authorized to call. No fraud or irregularity is suggested.

The election held in Escambia County as shown by the agreed statement of facts was legally sufficient to put the statute in operation in that county in so far as the statute is valid and depended upon the election for its effective force.

In order to justify the courts in declaring invalid

as a delegation of legislative power a statute conferring particular duties or authority upon administrative officers it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a *power* that appertains *exclusively* to the legislative department, and the conferring of it is not warranted by the provisions of the constitution.

The legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to regulations under the police power, since the complex and ever-changing conditions that attend and affect such matters make it impracticable for the legislature to prescribe all necessary rules and regulations.

Authority to make rules and regulations to carry out an expressed legisaltive purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all the departments.

The exercise of some authority, discretion or judgment may be incident or necessary to the performance of administrative or ministerial duties; but such authority, discretion or judgment is subject to judicial review; and it is not among the powers of government that the constitution separates into departments. State

v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep 969; Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 Sup. Ct. Rep. 436; Buttifield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. Rep. 349; Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. Rep. 367; First National Bank v. Union Trust Co., 244 U. S. 416, Sup. Ct. Rep. —; Selective Draft Law Cases, 245 U. S. 366, — Sup. Ct. Rep. —; Mutual Film Corp. v. Industrial Comm. of Ohio, 236 U. S. 230, 35 Sup. Ct. Rep. 387; The United States Intermountain Rate Cases v. Atchison, T. & S. F. R. Co., 234 U. S. 476, 34 Sup. Ct. Rep. 986; St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. Rep. 616; Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, 222 U. S. 380, 32 Sup. Ct. Rep. 152; President, etc., of the Monongahela Bridge Co. v. United States, 216 U. S. 177, 30 Sup. Ct. Rep. 356; Body v. United States, 143 U. S. 649, 12 Sup. Ct. Rep. 495; Whaley v. State, 168 Ala. 152, 52 South. Rep. 941; State v. McCarty, 5 Ala. App. 212, 59 South. Rep. 543; 12 C. J. 849; Hubbell v. Higgins, 148 Iowa 36, 126 N. W. Rep. 914, 23 Ann. Cas. 822; Saratoga Springs v. Saratoga Gas, Electric Light & Power Co., 191 N. Y. 123, 83 N. E. Rep. 693, 14 Ann. Cas. 606; Red "C" Oil Mfg. Co. v. Board of Agriculture, 172 Fed. Rep. 695; State v. Corvallis & E. R. Co., 59 Ore. 450, 117 Pac. Rep. 980; 12 C. J. 847; Minneapolis, St. P. & S. Ste. M. R. Co., 136 Wis. 146, 116 N. W. Rep. 905; Hill v. Cameron, — Ala. —, 69 South. Rep. 636; Smith v. State, Tax. Cr. —, 168 S. W. Rep. 522; 182 Fed. Rep. 675; 6 R. C. L. 178; 174 Pac. Rep. 973; 26 Ann. Cas. 406.

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law

makes, or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation." United States v. Grimaud, 220 U. S. 506, text 520, 31 Sup. Ct. Rep. 480; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. Rep. 495.

The authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense. United States v. Grimaud, 220 U. S. 506, text 521, 31 Sup. Ct. Rep. 480.

All property rights are held and enjoyed subject to the fair exercise of the State's police power to establish regulations that are reasonably certain to secure the general welfare of the State.

The wisdom and necessity, as well as the policy, of a statute are authoritatively determined by the legislature. Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282.

A general public purpose is expressed in the law and the provisions of sections 4, 5, 15 and other portions of the statute give the administrative board ample authority to make the rule here complained of. A sufficient primary standard for the administrative regulations was established by the Act itself; no arbitrary authority was conferred upon the board; the validity and reasonableness of permissible administrative regulations are subject to review by the courts, and the statute does not delegate legislative power in violation of the Constitution. The

reasonableness of its administration is subject to judicial review. The statute and not the administrative regulation defines the offense and imposes the penalty. United States v. Grimaud, *supra;* Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, 222 U. S. 380, 32 Sup. Ct. Rep. 152; Mutual Film Corp. v. Industrial Commission of Ohio, 236 U. S. 230, 35 Sup. Ct. Rep. 387; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769; State *ex rel.* Young v. Duval County, 76 Fla. 180, 79 South. Rep. 692 McKinley v. United States of America, U. S., decided April 14, 1919; 12 C. J. 846; 9 App. (D. C.) 82; 6 R. C. L. 181.

This case is essentially unlike State v. Crawford, Kan. , 177 Pac. Rep. 360.

Affirmed.

TAYLOR AND WEST, J. J., concur.

BOWNE, C. J., AND ELLIS, J., dissent as to delegation of power.