697 So.2d 561 (1997)
STATE of Florida, Appellant,
v.
AVATAR DEVELOPMENT CORP. and Amikam Tanel, Appellees.
No. 96-1639.
District Court of Appeal of Florida, Fourth District.
July 16, 1997.
Rehearing Denied August 19, 1997.
*562 Robert A. Butterworth, Attorney General, and Jonathan A. Glogau, Assistant Attorney General, Tallahassee, for appellant.
John H. Pelzer, Samuel S. Fields and Daniella Friedman of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellees.
David K. Thulman, Assistant General Counsel, State of Florida Department of Environmental Protection, Tallahassee, for Amicus Curiae-State of Florida Department of Environmental Protection.
PER CURIAM.
We have accepted jurisdiction pursuant to Rule 9.160, Florida Rules of Appellate Procedure, of the following certified question from the county court:
Are Florida Statutes § 403.161(1)(b) or § 403.161(5) unconsitutional as charged in the information?
Based on the certified question, the State of Florida appeals the dismissal of its criminal misdemeanor information against appellees Avatar Development Corp. ("Avatar") and Avatar's vice president, Amikam Tanel. We answer the certified question in the negative and we reverse the order dismissing the information.
The challenged statute subsections[1] provide:
*563 403.161 Prohibitions, violation, penalty, intent.
(1) It shall be a violation of this chapter, and it shall be prohibited for any person:
....
(b) ... to violate or fail to comply with any ... permit ... issued by the department pursuant to its lawful authority.
....
(5) Any person who willfully commits a violation specified in paragraph (1)(b) ... is guilty of a misdemeanor of the first degree punishable as provided in ss. 775.082(4)(a) and 775.083(1)(g) by a fine of not more than $10,000 or by 6 months in jail, or by both for each offense.
Fla. Stat. § 403.161 (1995).
On January 18, 1994, the Florida Department of Environmental Protection issued a permit authorizing Avatar to conduct dredge and fill operations in class III waters, for the purpose of stabilizing the banks of certain existing man-made canals tributary to the Intracoastal Waterway in Broward County and also authorizing it to lengthen an existing canal. The permit contained a number of conditions, including specific condition 3:
At least 48 hours prior to commencement of work authorized by this permit, the permittee shall notify the Department of Environmental Protection, Bureau of Wetland Resource Management in Tallahassee, and the Southeast District District [sic] office in West Palm Beach, in writing of this commencement.
It also included specific condition 5:
Prior to the commencement of any construction authorized by this permit, floating turbidity curtains with weighted skirts extending to the bottom of the man-made canals shall be properly installed around the shoreline stabilization areas and all areas to be dredged and filled, to isolate adjacent waters from the work area.... The floating turbidity curtains shall remain in place, be inspected daily and be maintained in good working order until all of the authorized work is complete, and turbidity levels in the project area are within 29 NTUs of background levels.
On November 28, 1995, the State charged Avatar and Tanel by information with two misdemeanors. Count I charged that appellees violated Section 403.161(1)(b) by willfully failing to provide written notice to the Department of Environmental Protection at least 48 hours before beginning the work authorized by the permit. Count II charged that appellees violated Section 403.161(1)(b) by willfully failing to employ turbidity curtains before beginning work authorized by the permit. Both counts also charge that these acts are first degree misdemeanors pursuant to Section 403.161(5), Florida Statutes.
The trial court dismissed the information, finding these statutory sections unconstitutional on three grounds: first, that they violate Article 1, Section 18 of the Florida Constitution; second, that they violate Article II, Section 3 of the Florida Constitution; and third, that they violate due process.
First, Article 1, Section 18 of the Florida Constitution provides:
No administrative agency shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law.
The trial court relied on B.H. v. State, 645 So.2d 987 (Fla.1994), in concluding that to allow an administrative agency to seek to impose imprisonment, even through its police powers, violated this section of the Florida Constitution. B.H. recognized, however, that Article 1, Section 18 "speaks only to the quasi-adjudicatory powers of some administrative agencies, [and] embodies an overall constitutional policy that administrative agencies may not create a criminal statute or its equivalent and prescribe the penalty." Id. at 993.
In this case, the State Attorney filed the information in county court, and the complaining *564 party is the State of Florida. The Department of Environmental Protection did not conduct an administrative hearing, nor has it imposed any penalty upon the appellees. Thus, the Department of Environmental Protection has exercised no quasi-adjudicatory powers with respect to Avatar or Tanel.
Second, Article II, Section 3 of the Florida Constitution provides:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

(Emphasis added).
The trial court also relied on B.H., 645 So.2d at 987, when it concluded that Sections 403.161(1)(b) and 403.161(5) were unconstitutional under Article II, Section 3. In B.H., the supreme court considered the validity of Section 39.061, Florida Statutes (Supp.1990). Id. Section 39.061 provided that an escape by a juvenile from a secure detention facility or a residential commitment facility of restrictiveness level VI(6) or above was a felony of the third degree. The statute also defined "restrictiveness level" as the identification of broad custody categories, to be established by the Department of Human and Rehabilitative Services ("HRS"). Id. The statute provided that these categories should include non-residential, residential and secure residential categories, and that there could not be more than eight levels. B.H. involved a question of whether the statutory enactment improperly delegated to HRS the legislative authority to determine what constitutes the crime of juvenile escape. In concluding that the statute did improperly delegate legislative authority to an administrative agency, the supreme court said:
This Court has stated repeatedly and without exception that Florida's Constitution absolutely requires a "strict" separation of powers.
Id. at 991 (emphasis added).
The term "legislative power" as used in Article III most particularly embraces statutes defining criminal offenses; and in the field of criminal law, the concept of separation of powers is directly linked to the Constitutional guarantee of due process. Thus we have held that "criminal statutes must be strictly construed according to their letter and ... this rule emanates from article I, section 9 and article II, section 3 of the Florida Constitution." Jeffries v. State, 610 So.2d 440, 441 (Fla. 1992). The nondelegation doctrine arising from article II, section 3 is directly at issue because "the power to create crimes and punishments in derogation of the common law inheres solely in the democratic process of the legislative branch." Perkins v. State, 576 So.2d 1310, 1312, (Fla.1991) (emphasis added). Likewise, due process is implicated because article I, section 9 requires that a criminal statute reasonably apprise persons of those acts that are prohibited; and the failure to do so constitutes a due process violation. Jeffries; Perkins.

Id. at 992.
In Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789 (1919), cited by appellant, a statute created the live stock sanitary board and authorized it to take such measures as were necessary or proper for the control and prevention of communicable diseases which infect domestic animals. The statute also provided that anyone who knowingly and willfully violated any rule or regulation of the board was guilty of a misdemeanor, punishable by fine or one year's imprisonment or both. A defendant charged with a misdemeanor under this statute sought habeas corpus on the grounds that it improperly delegated legislative authority to an administrative agency. The supreme court upheld the statute:
In order to justify the courts in declaring invalid as a delegation of legislative power a statute conferring particular duties or authority upon administrative officers, it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a power that appertains exclusively to the legislative department, and the conferring of it is not warranted by the provisions of the Constitution.
The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted *565 discretion in applying a law; but it may enact a law complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to regulations under the police power, since the complex and everchanging conditions that attend and affect such matters make it impracticable for the Legislature to prescribe all necessary rules and regulations.

Authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature, and its use by administrative officers is essential to the complete exercise of the powers of all the departments.
The exercise of some authority, discretion, or judgment may be incident or necessary to the performance of administrative or ministerial duties; but such authority, discretion, or judgment is subject to judicial review; and it is not among the powers of government that the Constitution separates into departments. (Citations omitted).
....
The authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense. (Citation omitted).
82 So. at 793-94 (emphasis added).
We note that the supreme court in B.H. did not overrule Bailey. In fact, B.H. continued to recognize that the constitution does not preclude all delegation of the legislature's authority to an administrative agency, not even when the legislature enacts criminal laws for the purpose of enforcing its statutes and administrative agencies promulgate rules and regulations to accomplish the legislative purpose of those statutes:
At times, a very fine line may separate an improper usurpation of legislative authority from valid agency rulemaking. As a general rule, our cases have noted that the legislature's exclusive power encompasses questions of fundamental policy and the articulation of reasonably definite standards to be used in implementing those policies. Askew [v. Cross Key Waterways, 372 So.2d 913 (Fla.1978)]. This, too, is a question much like the due process concern over the vagueness of a statute. Thus in Conner [v. Joe Hatton, Inc.], 216 So.2d [209 (Fla.1968)] at 211, we noted:
When the statute is couched in vague and uncertain terms or is so broad in scope that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement of the law, it must be held unconstitutional as attempting to grant to the administrative body the power to say what the law shall be.

It is true that
[f]lexibility by an administrative agency to administer a legislatively articulated policy is essential to meet the complexities of our modern society[.]

Askew, 372 So.2d at 924. Nevertheless, we stated those words in the context of reviewing land-use regulations. In the criminal law context, there also may be some degree of flexibility consistent with the nondelegation doctrine, but only to the extent that the statute itself provides adequate notice of the prohibited conduct. Any other rule would violate due process, rendering the statute invalid on that independent basis. Art. I, § 9, Fla. Const.; Jeffries; Perkins.

B.H., 645 So.2d at 993 (emphasis added, original emphasis omitted).
Here, a review of Chapter 93-213 Laws of Florida demonstrates that the Department of Environmental Protection is subject to express legislative control and guidance in the exercise of its authority. Section 403.021, Florida Statutes, declares that it is the public policy of the State of Florida to protect and conserve the air and waters of the state *566 through control, regulation and abatement of activities which cause pollution.
Section 403.061(14) directs the Department to establish a permit system to control and prohibit the operation of installations that may be a source of air or water pollution. Pollution is defined as:
the presence in the outdoor atmosphere or waters of the state of any substances, contaminants, noise, or manmade or man-induced impairment of air or waters or alteration of the chemical, physical, biological, or radiological integrity of air or water in quantities or at levels which are or may be potentially harmful or injurious to human health or welfare, animal or plant life or property or which unreasonably interfere with the enjoyment of life or property, including outdoor recreation unless authorized by applicable law.
Fla. Stat. § 403.031(7). Section 403.0876(2)(b) provides that, in processing permit applications, the Department of Environmental Protection may include specific permit conditions which are necessary to ensure compliance with applicable statutes and rules. Additionally, section 403.813(2)(f), governing permits issued at district centers, specifically addresses permit requirements for the performance of maintenance dredging of existing manmade canals upon certain conditions, one of which is that "control devices are utilized to prevent turbidity and prevent toxic or deleterious substances from discharging into adjacent waters during maintenance dredging."
We conclude that the statute in question here is comparable to that upheld in Bailey and distinguishable from the statute disapproved of in B.H. We also conclude that setting terms and conditions for a permit to dredge and fill, when authorized by a legislative program which requires attention to the unique conditions of the site, is especially suitable for determination by an administrative body. Sections 403.161(1)(b) and 403.161(5) do not unconstitutionally delegate legislative authority to an administrative agency.
Finally, the trial court misplaced its reliance on Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla.1968), when it found that Sections 403.161(1)(b) and (5) violate due process. The supreme court in Conner concluded that some sections of the statute constituted an unlawful delegation of authority; however, it upheld a statutory provision authorizing the Commissioner of Agriculture to promulgate marketing orders against a claim that the statute unlawfully delegated legislative authority to the Commissioner:
The subject matter of a statute may, however, be such that only a general scheme or policy can be laid down by the Legislature, and the details of the legislative policy can best be handled at the administrative level. The establishment of grades or standards of quality for fruits and vegetables appears to be especially suitable for determination by an administrative body.
Id. at 212 (citations omitted).
Sections 403.161(1)(b) and 403.161(5), Florida Statutes, unambiguously provide that to violate or fail to comply with a permit is a violation of the statute and constitutes a first degree misdemeanor. The terms and conditions presented in Section 403.021, which authorizes the Department of Environmental Protection to establish the permit system and enact rules and regulations to further the statute's purposes, are consistent with the legislature's intent to enforce these provisions under Section 403.161. The permit appellees received provided them with actual notice of the conditions upon which the permit was issued. In our view, the provisions of Chapter 403 satisfy the requirements of due process.
Accordingly, we hold that Sections 403.161(1)(b) and 403.161(5) do not unconstitutionally delegate legislative authority to the Department of Environmental Regulation and do not violate due process. We reverse and remand to the trial court with directions to reinstate the information.
REVERSED and REMANDED.
GLICKSTEIN, DELL and GUNTHER, JJ., concur.
NOTES
[1] The Department of Environmental Protection, as amicus curiae, has filed a brief outlining the history of the statutes at issue here. Before 1993, Chapter 403 authorized the Department of Environmental Regulation to adopt rules to carry out the provisions of sections 403.91-403.929 which governed dredge and fill activities in wetlands. By Chapter 93-213 Laws of Florida, the legislature adopted more comprehensive water quality legislation, adopting new statutes and repealing or consolidating others. This new legislation created the Department of Environmental Protection and required it to adopt new rules to implement the new statutory scheme. It also adopted existing Department of Environmental Regulation rules to maintain continuity during the hiatus. It is during this hiatus that the Department of Environmental Protection issued the permit herein. The challenged statutory subsections are identical in both versions, and the parties do not argue that any changes in the law affect their rights or responsibilities.