**SNIVELY GROVES, Inc., et al. v. FLORIDA CITRUS COMMISSION et al.**

District Court, N. D. Florida, Gainesville Division.

June 1, 1938.

Hull, Landis & Whitehair, of DeLand, Fla., for plaintiffs.

E. Glenn Grimes, of Bradenton, Fla., and J. W. Dupree, of Tampa, Fla., for Florida Citrus Commission.

Cary D. Landis, Atty. Gen. of Florida, John L. Graham, Asst. Atty. Gen. of Florida, and Wm. C. Pierce, of Tampa, Fla. (Cody Fowler, of Tampa, Fla., George A. Decottes, of Sanford, Fla., and George P. Raney, of Tampa, Fla., of counsel), for Nathan Mayo, as Commissioner of Agriculture of Florida.

Before FOSTER, Circuit Judge, and STRUM and LONG, District Judges.

LONG, District Judge.

This cause is before this Court upon the bill of complaint; application for temporary injunction; motion to dismiss the bill filed by the Attorney General of Florida; motion to strike portions of the bill filed by Florida Citrus Commission; motion to dismiss the bill filed by Florida Citrus Commission; motion to strike portions of the bill filed by the Attorney General of Florida; answer of Florida Citrus Commission and the individual members thereof; answer of the Commissioner of Agriculture, Nathan Mayo; motion to strike the answer filed by Florida Citrus Commission; motion to strike the answer of the Commissioner of Agriculture; and affidavits filed.

The purpose of the suit is to enjoin the enforcement of a rule or regulation of the Florida Citrus Commission by the defendants, which rule or regulation fixes standard containers for citrus fruit in pursuance of Chapter 16854, Laws of Florida, Acts of 1935, as amended by Chapter 17775, Laws of Florida, Acts of 1937. The regulation provides as follows:

"The containers adopted for citrus fruits shall be those containers of a maximum capacity of not over one and three-fifths (1⅗) bushels, as specified in E. H. DuLaney, I. C. C. 54, Supplements thereto or successive issues thereof as set forth in supplement 36 of Tariff 232-A, with the addition to the bags specified therein of one of the capacity of one-half standard box and the addition thereto of Duz-Pak, listed in tariff regulations promulgated September 16, 1935; provided, however, that no container shall hold more of a given size of oranges, grapefruit or tangerines than will a Florida standard crate when commercially filled; and provided that no closed container which has been previously used for the sale, transportation or shipment of citrus' fruit shall be used again for that purpose, except that the Florida Citrus Commission may by special written permit allow the re-use of closed containers on the conditions set forth in Sub-sections 1, 2, 3, 4 and 5 of Section 1 of this Regulation."

The constitutional questions raised, and upon which redress is sought, are: that the regulation constitutes an unlawful interference with interstate commerce; is not a legitimate use of the police power; that plaintiffs will be deprived of their property without due process of law, and without equal protection of the law; that the regulation is discriminatory, arbitrary, unreasonable and capricious so as to invade rights secured to plaintiffs by the organic law.

Defendants contend that the requisite jurisdictional amount exclusive of interest and cost has not been shown to appear; that the enforcement of the rule and regulation in question is well settled; and that the Citrus Commission has acted within its rights; and that no constitutional right of the plaintiffs has been violated.

The allegations of the bill which seek to allege facts showing the jurisdictional amount to be involved are allegations of certain damages to the plaintiffs that will be incurred in the event an injunction is not granted; that the plaintiff Florida All Bound Box Company has spent large sums of money for buildings, machinery and equipment and has contracted for materials for the manufacture of Bruce boxes and has on hand materials of great value; that

another plaintiff has made similar investments and has on hand manufactured boxes of great value, has leased stumpage, made advances to logging concerns; and that both of these plaintiff companies have on hand contracts for the delivery of such boxes, and that the value of the contracts is in excess of the jurisdictional amount. It is also alleged that plaintiffs in this suit will necessarily have to purchase machinery with which to stamp individual fruit shipped in these two-bushel Bruce boxes which would cost $3,200.00; that if plaintiffs are not permitted to ship fruit in two-bushel Bruce boxes their business will be diverted to Texas; and that the cost of shipment in the Bruce boxes to New York reduces the cost in about the sum of $115.00 per car; and if not allowed to ship in these particular boxes they will be deprived of great profits; that if the rule or regulation is enforced that an additional expense will be incurred by these plaintiffs through stamping the grade upon each individual fruit, which will destroy valuable property rights of the plaintiffs by imposition of such expense to their loss; that such property right is valuable to said plaintiffs and has a value to each of said plaintiffs in excess of $3,000.00.

■ There is grave doubt whether the allegations of the bill relied on to invoke the jurisdiction show a proper amount in controversy in excess of the jurisdictional amount, as it is based upon an estimated damage which plaintiffs allege they will suffer, and which damages are speculative. The rule by which damages are measured in this class of cases is:

"The value of the right to be free of the rule or regulation complained of."

In the case of Paul V. McNutt v. General Motors Acceptance Corporation of Indiana, 298 U.S. 178, 56 S.Ct. 780, 80 L. Ed. 1135, the Supreme Court said (page 781),

. "Respondent points to the allegations of its bill that the 'net worth' of its business exceeds $50,000; that in 1934 it purchased retail installment contracts in Indiana aggregating in excess of $7,000,000; that the value of such purchases for the first six months of 1935 was in excess of $4,000,000; and that during 1934 respondent purchased in Indiana approximately 23,000 installment sales contracts from more than 500 retail dealers; * * * that respondent maintained offices in Indiana for which it paid yearly an aggregate rental of $13,147;

that it employed on the average 85 employees whose aggregate annual salaries amounted to about $150,000. * * * The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve. The bill is thus destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,000. * * *"

So it is with the case at Bar, the allegations of the respondents' bill as to the extent or value of its business throw no light upon the subject other than contemplated loss or damage by reason of the enforcement of the rule. It would, therefore, appear that the bill does not allege any facts that show the value of the right to be free from the regulation of the Florida Citrus Commission to be in excess of $3,000.00 exclusive of interest and cost. Grave doubt is, therefore, entertained by the Court as to its jurisdiction.

■ Passing to the first constitutional question raised by the bill, that the regulation constitutes an unlawful interference with interstate commerce,—in the case of Polk Company et al. v. Glover et al., D. C., 22 F.Supp. 575, before Foster, Circuit Judge, and Akerman and Long, District Judges, the Court held that the regulation is one affecting the product while in the process of manufacture and while within the jurisdiction of the state and some time before the commodity actually commences to journey from one state to another; that the point of time at which a commodity enters into interstate commerce and ceases to be subject to the state wherein it is produced is when the commodity actually commences its journey from one state to another, and until such time arrives the state in which the commodity is located has jurisdiction over it. Citing, among other authorities, Pacific States Box & Basket

Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Maxcy, Inc., v. Mayo, 103 Fla. 552, 139 So. 121. Production of an article intended for interstate commerce is a matter of local regulation, and interstate commerce therein does not begin until actual delivery to common carrier for transportation for actual commencement for its transfer to another state. (Authorities there cited).

■ The rule or regulation has but one purpose, and that is to protect the largest industry in the State of Florida,—an industry affected with a public interest and a subject for proper regulation by the state. It is shown by the pleading that many months prior to the adoption of the rule complained of that the Citrus Commission conducted a complete, careful and exhaustive study and research as to the advisability and the wisdom of adopting a container of a standard maximum capacity of one and three-fifths bushels for the packing of citrus fruit, considering all phases of the question whether a container of a specified maximum standard capacity would be best adapted to the protection of the public, and whether the adoption of a standard maximum capacity for containers for citrus fruit would be in accordance with the legislative policy of the state.

In Polk Company v. Glover, in which the regulation required embossing of the word "Florida" upon the container of citrus fruit or juices, the Court said (22 F. Supp. page 579):

"We are of the opinion that the decision of the Supreme Court of the United States in Sligh v. Kirkwood, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835, is sufficient authority for denying the interlocutory injunction and dismissing the bill. It is true that this case dealt with the shipment of immature oranges that were considered deleterious to health, but on page 61 of 237 U.S., page 503 of 35 S.Ct. of the text, the Supreme Court said: 'We may take judicial notice of the fact that the raising of citrus fruits is one of the great industries of the state of Florida. It was competent for the legislature to find that it was essential for the success of that industry that its reputation be preserved in other states wherein such fruits find their most extensive market.'"

In adopting the rule or regulation complained of, the Florida Citrus Commission recognizes that it was necessary to require that the citrus fruit should be packed in standard containers; that they had information from official publications to the effect that the two-bushel container should be eliminated from tariffs I. C. C. No. 8 and I. C. C. No. 69 due to the fact that the two-bushel containers were demoralizing the general welfare of the citrus industry, detrimental to growers of citrus fruits, and that the growers are deprived of a fairer and greater return for their fruit by the use of such containers; that normal plant operations are disrupted by the use of such containers; that it is difficult for packing plants to maintain skilled and efficient labor when using containers of the two-bushel type for packing citrus fruit; that the Commission was not without authority for this regulation. See Turner v. Maryland, 107 U.S. 38, 2 S.Ct. 44, 27 L.Ed. 370.

In Pacific States Box & Basket Co. v. Gehlar, D.C., 9 F.Supp. 341, in which it was attempted to enjoin the enforcement of orders of the Department of Agriculture of the State of Oregon which fixed standard containers for strawberries and raspberries in accordance with the statutes of that state, the Court said (page 342):

"It is a matter of general knowledge that enforced standardization of containers is essential to the economic handling, shipping, and selling of horticultural products, for, among other reasons, it prevents fraud and deception in sales, provides the best method of stowage, and eliminates many sizes that complicate the problems of transportation.

"Legislation designed to aid and promote the industry in the manner provided by the Oregon laws falls within the legitimate use of the police power of the state."

It is not so much a question of whether or not the Florida Citrus Commission acted wisely in its selection of the standard containers or whether the containers are as well as or better adapted to the use intended, as this does not present a subject for jurisdictional determination. The power of this Court to adjudicate such matters is limited to cases where it appears from the facts alleged that the order or regulation is so greatly arbitrary and discriminatory as to invade the rights secured to plaintiff by the Constitution.

■ The next question to be determined is whether the plaintiffs by the order or regulation are deprived of their property without due process of law and whether or not the regulation is discriminatory, arbitrary, unreasonable and capricious to

such an extent as to invade the rights of these plaintiffs as secured to them by organic law. It would seem from the allegations of the bill that the question which is undertaken to be raised is the matter of policy and wisdom in the adoption of the regulation. As stated in the case of Pacific States Box & Basket Co. v. White, supra, the question of policy and wisdom of administrative regulations is one with which the Courts have no concern.

The bill alleges the superiority of the particular package known as the Bruce two-bushel container, which is denied by the answer. The Florida Citrus Commission was presented a petition of shippers, who shipped some seventy-five per cent. of the volume of citrus fruit to markets out of the state, urging the passage of the rule complained of, and, upon hearing of the facts involved, the Commission determined upon the wisdom and benefits of the passage of such a regulation, and, by virtue of authority delegated to them by the act of the legislature, passed the order or regulation prescribing a standard container. That the authority to make such a regulation granted to the Commission by the acts of the Florida Legislature heretofore referred to does not appear to be challenged by the bill. However, this question has been determined by the Supreme Court of the state. In passing upon the question of delegation of authority this Court adopted the principle of law that:

"The Legislature, in enacting a law complete in itself, designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission within fixed and valid limits to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose." State ex rel. Davis v. Fowler et al., 94 Fla. 752, 114 So. 435, 437; Ex parte Lewis, 101 Fla. 624, 135 So. 147.

■ We pass now to the question of whether or not the regulation complained of is so discriminatory, unreasonable or capricious as to deprive the plaintiffs or either of them of any of their rights guaranteed by the organic law. Quoting again from Pacific States Box & Basket Co. v. White et al., supra:

"An order of a state department of agriculture requiring the use of containers of a certain type, form, and dimensions in marketing strawberries and raspberries does not deny the equal protection of the law to manufacturers of other types of containers where the type prescribed is not protected by patent or trademark and its manufacture is not a trade secret so that all persons are free to manufacture them."

Section 12 of the Act provides that all citrus fruit sold or offered for sale shall be crated and have stamped thereon the grade thereof, except when placed in a closed container which meets the standards established by the Commission. It requires fruit to be graded and the grade stamped on the fruit, except that a shipper using a container adopted by the Commission may stamp the grade of the fruit on the container rather than on the fruit. It does not discriminate against the Bruce box, but merely requires the manufacturers of the Bruce box to comply with the standard adopted, or, in the event the two-bushel box is used, then the requirement is that the grade be stamped on the fruit. If the manufacturers of the Bruce box comply with the regulation by the manufacture of the container that meets the standard adopted, then the grade of the fruit may be stamped on the container. In connection with the use of adopted containers, the Commission may by order or regulation permit the use of registered labels, brands or trade-mark which represent a grade.

There is no attempt under the regulation to exclude the two-bushel container from use, but it requires the shipper, if he insists on the use of this container, to stamp the fruit according to its grade shipped in the container.

The state has the authority to make regulations applicable equally to all containers, and the particular regulation must be sustained if facts sustain it as reasonable.

■ In passing upon the sufficiency of a bill seeking a temporary injunction, the Court will consider whether or not the injury to the public outweighs the injury to the plaintiffs which would result from the refusal to grant the relief.

In this case it is shown that citrus fruit containers larger than one and three-fifths bushels, designated by the regulation as the standard container, would tend to demoralize the price received for citrus fruit in all containers; do not preserve the fruit in transit as well as the one and three-fifths bushel container, and smaller; tend to prevent the standardization of citrus

fruit containers; and are cumbersome and must be handled differently from the smaller size containers.

It is the opinion of the Court that the application for interlocutory injunction should be denied and the bill dismissed. It will be so ordered.