118 So.2d 781 (1960)
STATE of Florida, Appellant,
v.
Salvatore LEONE, Appellee.
Supreme Court of Florida.
March 16, 1960.
*782 Richard W. Ervin, Atty. Gen., B. Clarke Nichols, Asst. Atty. Gen., Richard E. Gerstein, State Atty. and Roy S. Wood, Asst. State Atty., Miami, for appellant.
Boardman, Bolles & Davant, Miami, for appellee.
O'CONNELL, Justice.
This cause had its beginning in an information filed by the State, appellant here, against Salvatore Leone, the appellee, which information charged that appellee:
"did then and there unlawfully own, operate, maintain, open, establish, conduct or have charge of, alone or with another person or persons, a retail drug establishment, located at 14504 N.W. 7th Avenue, Dade County, Florida, known as White Cross Drugs which then and there was not, while open for business or while engaged in the business of compounding, dispensing, or selling drugs or medical supplies, under the constant and immediate supervision of a person licensed as a pharmacist in this state, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida." (Emphasis added.)
The basis for the information is § 465.18(1), F.S. 1959, F.S.A.
Appellee moved to quash the information. The trial court granted the motion holding § 465.18(1) unconstitutional "for the reason that to enforce such law would be an abridgement of the privileges of certain citizens of the State of Florida and the United States in that it discriminates against said defendant and other citizens of a similar class." The State appeals from the order quashing the information.
The specific subsections of the statute here involved, § 465.18(1, 5), provide that anyone who:
"(1) owns, operates, maintains, opens, establishes, conducts, or has charge of, either alone or with another person or persons, a retail drug establishment that is not, while open for business or while engaged in the business of compounding, dispensing, or selling drugs or medical supplies, under the constant and immediate supervision of a person licensed as a pharmacist in this state, or
* * * * * *
"(5) * * * shall, upon conviction, be fined a sum not to exceed one thousand dollars, or be imprisoned for a period not to exceed six months, or shall be so fined and imprisoned for each violation. * * *"
The term "retail drug establishment" is defined in § 465.031(1), F.S.A., in such manner as to make the term applicable to all retail stores using the term "drug store" or various related terms, either in signs thereon or in advertising. As defined in the statute the term includes both *783 those businesses which deal solely in drugs and medicines, the preparation and sale of which is controlled by law, and the modern versions of the drug store which deal in the preparation and sale of such drugs and medicines, but also in varying degrees engage in the business of selling items not controlled by law, such as food, proprietary or patent medicines, cosmetics, tobacco, household and personal articles unending in number and description. In many, if not most, of the latter stores the preparation and sale of controlled drugs is only a part of the total business done.
The statute establishes two conditions requiring supervision of a retail drug establishment by a licensed pharmacist. The conditions are stated in the disjunctive; therefore, it must be assumed that the legislature intended them to be separate and distinct from each other.
The first requires supervision by such a person while the establishment is "open for business." This would require such supervision of the establishment even though the establishment at that time not be engaged in the preparation or sale of controlled drugs or medical supplies.
The second requires supervision by such a person while the establishment is engaged in the "compounding, dispensing, or selling" of controlled drugs or medical supplies.
The second condition appears to be included within the first, since "while open for business" would seem to include all transactions and operations of a retail store. Certainly "while open for business" would include the "dispensing, or selling" of such controlled drugs and medical supplies. It is possible, however, that such a store could be closed for business, in the sense that its doors would be closed to patrons, and yet be engaged in "compounding" such controlled items. The second condition could therefore have this meaning which would not be covered by the first.
The statute requires the supervision by the licensed pharmacist to be exercised not only over that part of the business involving the compounding, dispensing, or selling of controlled drugs and medical supplies but over all other phases and facets thereof.
Therefore the requirement of the statute is that one who owns or operates a retail drug establishment must have a licensed pharmacist in constant and immediate supervision of the entire operation of the store while open for business of any kind and when closed, if there be any compounding of controlled drugs or medical supplies. The subsection of the statute with which we are concerned is not limited in application to those drug stores or pharmacies which deal solely in controlled drugs and medical supplies, but applies to all retail drug establishments as defined in the statute.
It cannot be doubted that the State in the interest of the public health may require that the compounding, dispensing, or selling of drugs and medical supplies, which are potentially harmful or dangerous to an uninformed or incautious user, be done only under supervision of a licensed pharmacist. This would apply to such acts whether done when the store is open for business or when its doors are closed to its customers.
The question then to be decided is whether this requirement of supervision by a licensed pharmacist may be lawfully extended so as to cover all of the operations of a drug store, including those which are unrelated by their nature to the preparation and sale of controlled drugs and medicines.
We think the answer to the question must be in the negative.
Unquestionably the purpose of Chapter 465, F.S.A., and the specific subsection involved here, is to protect the public health by limiting the preparation and sale of those drugs and medicines which are potentially dangerous or harmful, either in *784 preparation, handling, possession, or use, to those persons possessing requisite pharmaceutical skill and knowledge. It is clear from the act itself that the prohibitions and restrictions prescribed in the act were not intended to be applicable to the preparation or sale of non-controlled drugs and medical supplies sold by drug stores, for § 465.021(1) provides that the act does not apply to the sale by merchants of home remedies or patent medicines.
It is only that part of the business of a retail drug establishment which deals with the preparation and sale of controlled drugs which affects the public health, as the legislature intended to safeguard it in the pharmacy statute. The many other operations of a modern drug store admittedly require no pharmaceutical skill and knowledge. Other retail stores perform all of these operations and sell the same non-controlled drugs and medical supplies freely, without supervision by a licensed pharmacist.
In order for the State to lawfully include those operations of a drug store which do not deal with the preparation of controlled drugs and medical supplies under the regulation of the statute it must be shown that the innocent or innocuous facets of the drug store's business are so related to the preparation and sale of the controlled drugs and medical supplies as to make their inclusion necessary in order to secure efficient enforcement of the act.
This doctrine which allows inclusion of innocent acts within the regulations or prohibitions of an act passed in exercise of the police power is discussed at length in the case of L. Maxcy, Inc. v. Mayo, 1932, 103 Fla. 552, 139 So. 121.
It is on this doctrine that the State bases its contention that the statute is valid. For, says the State, if the subsection is not upheld "an army of enforcement officers" will be required to insure that controlled drugs and medical supplies are compounded, dispensed, or sold only under the supervision of licensed pharmacists.
Undoubtedly, the doctrine discussed in the Maxcy case is a good one and there are instances where the public interest may require the regulation or prohibition of innocent acts in order to reach or secure enforcement of law against evil acts. But we do not regard the situation presented here as one justifying the application of the doctrine.
As pointed out in the Maxcy case on page 130 of 139 So., this Court in speaking of the limitations of the inclusion of innocent acts doctrine said:
"* * * It cannot be relied on to sustain a measure of prohibition so loosely or broadly drawn as to bring within its scope matters which are not properly subject to police regulations or prohibitions * * *."
While it is true that the constitutional guarantee of individual rights does not prevent the exercise of the police power so as to interfere with such rights, it does operate to limit the exercise of that power.
The limitation is such that the police power may only be used so as to interfere with the God-given and constitutionally protected right of the individual to pursue a lawful business, or so as to discriminate against an individual or class, where the public interest demands that the rights of the individual, or class, give way in favor of the public generally.
To exercise this power to the detriment of the individual or class, it must first be clear that the purpose to be served is not merely desirable but one which will so benefit the public as to justify interference with or destruction of private rights.
Then, the police power may be used only against those individual rights which are reasonably related to the accomplishment of the desired end which will serve the public interest. This means that the interference with or sacrifice of the private rights must be necessary, i.e. must be essential, to the reasonable accomplishment *785 of the desired goal. Such interference or sacrifice of private rights can never be justified nor sanctioned merely to make it more convenient or easier for the State to achieve the desired end. This is so because one, if not the principal, reason for the existence of a democratic form of government is to guarantee to the individual freedom of action in those pursuits which do not harm his neighbors. If there is a choice of ways in which government can reasonably attain a valid goal necessary to the public interest, it must elect that course which will infringe the least on the rights of the individual.
In the case before us we can understand that it would be more convenient, and it would be easier, to insure that all controlled drugs and medical supplies are prepared and dispensed only by licensed pharmacists by requiring that all drug stores be supervised by licensed pharmacists. But we do not find such a reasonable relation between the whole operation of a drug store and the public purpose sought to be attained as to justify the requirement imposed. Nor does it appear that the other operations of a modern drug store are so interrelated and entwined with that part of its business which relates to the preparation and sale of controlled drugs and medical supplies as to make it necessary to impose the requirement of supervision by a licensed pharmacist in order to obtain reasonably successful enforcement of the prime purpose of that portion of Chapter 465 involved in this cause.
That part of a retail drug establishment which deals with the preparation of controlled drugs and medical supplies is distinguishable in kind and nature from its other operations. The very nature of the controlled acts requires that they be performed in a distinct area of the storeroom occupied by the store. The other articles sold by such a store have so little relation to the public health that their sale is not controlled by laws or regulations requiring supervision of a pharmacist if sold in a grocery store, ten-cent store or other retail establishment. To require that such operations be supervised by a licensed pharmacist merely because done in a storeroom which also prepares and sells controlled drugs does discriminate against the owners and operators of such establishments without valid reason therefor and we cannot sustain the statute which requires it.
We realize that we must so construe the act as to cause it to be constitutional if possible to do so. The legislative enactment which gave birth to § 465.18(1), ch. 28150, Laws of Fla. 1953, contains a broad severability clause which would authorize us to perform major judicial surgery on the subsection involved in an effort to prevent its death.
We have considered trying to save the subsection in several ways.
First, we might construe the disjunctive "or" as used in that phrase "while open for business or while engaged in the business of compounding", etc. to mean "and" so that the subsection could be construed to mean that supervision of a licensed pharmacist would be required only when the store was open for business and also was engaged in the preparation and sale of controlled drugs and medical supplies. But this construction would still mean that when the store was engaged in preparation and sale of the controlled items the supervision of the pharmacist must extend to all operations of the store, which as discussed above cannot be lawfully required.
In order to overcome this last problem we have considered construing the statute to mean that the supervision of the pharmacist was required to be maintained only over that part of the business which involves the preparation and sale of controlled drugs and medical supplies. But this would require us to ignore the plain words of the subsection which make no distinction between the uncontrolled and the controlled operations of a retail drug establishment. This construction has been used by other courts in similar cases. See Ernest v. *786 State, 1931, 162 Tenn. 247, 36 S.W.2d 438, 74 A.L.R. 1081, and Stewart v. Robertson, 1935, 45 Ariz. 143, 40 P.2d 979. But the difference in the statutes involved causes us to have grave doubt of our right to do so here.
We have also considered striking the words "while open for business or" from the subsection involved, but even if this were done the invalidity of the requirement of supervision by the pharmacist of the whole store still remains.
Too, there is another problem presented by the subsection which has led us to the conviction that we cannot construe the act so as to make it constitutional and still be able to say that the legislature would be satisfied with our alteration of the meaning thereof. The statute plainly requires the supervision of a licensed pharmacist of the business of "compounding, dispensing, or selling drugs or medical supplies."
The term "medical supplies" is not defined in the act. In ordinary usage it has a broad meaning. It includes such items as cotton, gauze, antiseptics, alcohol, bandaids, liniment, and many other articles and substances found and used in most homes without prescription of a physician. These articles are easily purchased in retail stores of many kinds, none of which is required to be supervised by a pharmacist. While they may be related to the preservation of health they are not in any way connected to the restriction against preparation and sale of those drugs and medical supplies which are potentially harmful.
We could well construe medical supplies, as the term is used in the act, to mean only those substances and articles which are potentially harmful and require pharmaceutical skill and knowledge in preparation or sale. But the use of this term in the act along with the apparent attempt of the legislature to require supervision by a pharmacist of all the operations of a retail drug establishment convinces us that we would be giving the term a more restricted meaning than intended by the legislature.
We therefore must conclude that it is impossible to construe § 465.18(1) so as to hold it constitutional and we must affirm the order of the trial court declaring it to be unconstitutional.
This does not mean that the State is left powerless under the remainder of Chapter 465 to control the preparation and sale of potentially harmful drugs and medical supplies by retail drug establishments, for the other subsections of § 465.18 contain provisions which prohibit the filling of prescriptions by persons other than licensed pharmacists, or those under their supervision. Further, other provisions of the law, state and federal, control in large measure the possession, preparation, and sale of drugs and medical supplies which are of such nature as to require regulation in preparation and sale.
The order appealed from is affirmed.
THOMAS, C.J., and TERRELL, HOBSON, ROBERTS and DREW, JJ., concur.
THORNAL, J., concurs in judgment.
THORNAL, Justice (concurring in judgment).
I regret that I cannot agree to the very thorough opinion prepared by Brother O'CONNELL. I do, however, concur in the judgment of affirmance.
The opinion of the majority holds Section 465.18(1), Florida Statutes, F.S.A., unconstitutional in its entirety. I do not feel that this entire section must be stricken down. For many of the reasons announced by the majority I would eliminate the words "while open for business or." The effect of this deletion would be to leave a perfectly workable statutory provision. In my view the section as so corrected would be constitutional. I have the feeling that it is well within the legislative prerogative to require a retail drug establishment to have a licensed pharmacist on duty at all times *787 during which drugs are being sold. The mere fact that the "drug store" might sell everything from watermelons to washing machines, in addition to dispensing drugs, would not in my view invalidate the provision or impose an undue restraint on the operation of a business which so vitally affects the public health. Let us not forget that the "washing machines and watermelons" are the bargaining "come-on" that attracts the customer who needs his next prescription filled.
The majority aptly recognizes our duty to uphold the constitutionality of an act of the Legislature if it is at all possible. If we can devise any legitimate avenue of interpretation to accomplish this result we should pursue this course. Chapter 465, Florida Statutes, F.S.A., which originated as Chapter 28150, Laws of Florida, 1953, contained an exceedingly broad severability clause. By striking the words quoted above, it appears to me that the remainder of the act would be perfectly constitutional and enforceable.
I do not share the concern of the majority regarding the difficulty of defining "medical supplies." The statute refers to engaging "in the business of compounding, dispensing, or selling drugs or medical supplies." It appears to me that "medical supplies" is colored by the use of the preceding word "drugs" as well as by the verbs "compounding, dispensing." In other words, by the simple application the doctrine of ejusdem generis, the term "medical supplies" should be classified as that type of medical supplies related to the compounding or dispensing of drugs. I think the maxim noscitur a sociis authorizes us to associate the words "drugs" and "medical supplies" together so that each takes color from the other and the limited expression "drugs" restricts the definition of the more general expression "medical supplies." State ex rel. Wedgworth Farms v. Thompson, Fla., 101 So.2d 381.
I agree to the affirmance of the judgment of the trial court quashing the information because the charge against the appellant was in the alternative and included the accusation that he failed to have a licensed pharmacist in his retail drug establishment "while open for business." Having held this provision invalid, we must agree that the judge correctly quashed the information. For the reasons afore-mentioned, however, I do not agree that all of Section 465.18(1), Florida Statutes, F.S.A., must fall. I therefore, concur only in the judgment of affirmance.