358 So.2d 174 (1978)
BELK-JAMES, INC., a Florida Corporation, Appellant,
v.
Charles A. NUZUM, Director, Division of Beverage, Department of Business Regulation, State of Florida, Beer Industry of Florida, Inc., and Adoph Coors Company, Appellees.
No. 50881.
Supreme Court of Florida.
March 9, 1978.
Rehearing Denied May 22, 1978.
*175 Joseph C. Jacobs and Robert J. Angerer of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellant.
Charles T. Tunnicliff, Charles T. Collett and Dennis E. LaRosa, Staff Attys., Tallahassee, for Charles A. Nuzum.
Lee L. Willis, II and James D. Beasley of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Beer Industry of Florida, Inc.
Earle D. Bellamy, II of Bradley, Campbell & Carney, Golden, Colo., for Adolph Coors Co., intervenor-appellee.
ENGLAND, Justice.
Section 563.06(1), Florida Statutes (1975), provides that all taxable malt beverages possessed for sale or resale in Florida (with exceptions not relevant here)
"shall have printed or lithographed on the crown or can lid thereof, the word `Florida'... . Manufacturers of the malt beverages shall be required to submit samples of crowns or lids to the division [of beverage of the Department of Business Regulation] for approval as to the `Florida' designation."
Belk-James, Inc., a distributor who contracted to purchase Coors beer in South Carolina and sell it in Florida, challenges the constitutionality of Section 563.06(1), principally on the ground that it violates the due process clauses of the United States and Florida Constitutions[1] in that the statutory requirements of imprinting "Florida" on all container tops, and of permitting manufacturers alone to submit applications for approval, are unreasonable regulations not related to any legitimate state interest. This challenge to the statute is opposed by the agency charged with beverage administration (the Division of Beverage of the Department of Business Regulation), by Adolph Coors Company, which manufacturers Coors beer, and by the Beer Industry of Florida, Inc.[2]
All the parties agree that the proper standard by which we must evaluate the Legislature's exercise of the police power in the area of economic regulation is whether the means utilized bear a rational or reasonable relationship to a legitimate state objective. See Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Castlewood International Corp. v. Wynne, 294 So.2d 321 (Fla. 1974). The dispute between Belk-James and the Division centers on the putative relationship between the statute's regulatory scheme and two asserted justifications for its validity  the collection of revenue for the state in the form of malt liquor taxes, and the goal of ensuring that only wholesome beer, as opposed to stale or unwholesome beer, is brought into the state *176 for sale or resale.[3] Each of the statutory justifications is discussed separately.[4]

1. Justification as a regulation to promote wholesome products.

The Division argues that the perishable nature of malt beverages demands that beer be shipped directly to Florida in order to ensure freshness, and that both of the requirements in Section 563.06(1) reasonably advance this objective. Belk-James disputes any logical connection between the word "Florida" on the container top and the wholesomeness of the product inside, inasmuch as the stamp is imprinted by the manufacturer without limitations against the imprinting of several states' names on the crown or lid. The Division meets this contention by suggesting that the labelling requirement is all that is needed to induce commercial self-policing, since manufacturers would find it commercially infeasible to do what Belk-James suggests they might.
We have to agree with the Division that the Legislature may regulate by commercial self-compulsion, and that in this case it might reasonably have relied on the motivations of beer manufacturers to preserve the freshness of their own product. By directing that only manufacturers may imprint containers, the Legislature might reasonably have provided the regulatory impetus to achieve quality control, based on a subsidiary assumption that others in the beer distribution chain are not as keenly motivated as the manufacturer to ensure the freshness of any particular product.[5]

2. Justification as a revenue measure.

The collection of excise taxes on malt beverages under Section 563.05, Florida Statutes (1975), is a substantial source of state revenue. In its fiscal year 1975-76, the State of Florida collected more than $76,000,000 in beer excise taxes. It is appropriate that the Legislature provide reliable methods of tax enforcement. Cf. Dominion Land & Title Corp. v. Department of Revenue, 320 So.2d 815 (Fla. 1975). Tax collection for malt beverages is achieved by so-called "depletion" control, whereby the tax is computed by reference to the number of taxable malt liquor containers withdrawn from the warehouses of distributors for delivery to retailers. The requisite tax is paid by distributors to the Division on a monthly basis, accompanied by suitable reports, and is periodically verified by audits and inspections.
Belk-James basically argues that since the state neither places nor supervises the placement of "Florida" designations on beer containers, it cannot know which malt beverage containers have been taxed. The Division argues that Section 563.06(1) is one facet of an integrated statutory scheme for regulating and taxing beer sales, and that the Legislature might reasonably have concluded that malt beverage containers marked by the manufacturer with an approved "Florida" designation are more likely to follow closely monitored channels of distribution, *177 from which the tax is collected. To evaluate these competing claims we must examine the total regulatory scheme to see if it reasonably assures distribution only within regulated channels.
The Florida Beverage Law begins by establishing qualifications and procedures for the licensure of all persons in the chain of distribution.[6] It then makes it unlawful to sell malt products without strict adherence to the terms of a license, providing significant penalties for non-compliance.[7] Beer manufacturers who ship their product into Florida for sale or resale, aside from being required to affix a pre-approved "Florida" designation, are required to submit detailed reports on the amount of beer shipped into the state.[8] Moreover, those who may transport beer into Florida for sale or resale, and those who may receive beer shipments from outside the state, are rigidly controlled[9] and also subject to strict reporting requirements.[10]
The Division argues that it can ascertain and control taxability on the basis of documents received from licensees, and that the regulatory scheme provides a stringent set of controls by which it can enforce compliance with the beer excise tax laws. The Division also notes that it performs field audits on distributors, bonded warehouses, and retailers, and in this respect monitors the presence or absence of "Florida" designations on beer container tops.[11] These audits thus provide a viable means for the detection of beer which enters the Florida market through unregulated, illegal channels.
We are satisfied that the requirements of Section 563.06(1) bear a sufficient relationship to revenue collection to withstand the due process attack. The arguments advanced by Belk-James, which essentially question whether the best means of regulation has been chosen, can be seen as directed more to the wisdom of the legislation than to its asserted rationality. This inquiry, of course, is inappropriate for our judicial function. Holley v. Adams, 238 So.2d 401 (Fla. 1970).
Since we begin with a presumption that acts of the Legislature are constitutional,[12] and that all reasonable doubts are to be resolved in favor of their validity,[13] we have no difficulty concluding that Section 563.06(1), Florida Statutes (1975), meets the due process requirements of the United States and Florida Constitutions.
As a final point, Belk-James has suggested that if this statute is constitutional, it is entitled to a declaration that it has "substantially" complied with Section 563.06(1) because its exclusive distribution contract for Florida effectively makes Belk-James the "manufacturer" of Coors beer for state regulatory purposes. The trial judge, we think, quite properly rejected this "construction" of the statute.
The order of the Leon County Circuit Court, dismissing Belk-James' complaint, is affirmed.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] U.S.Const. amend. XIV; Art. I, § 9, Fla. Const.
[2] This matter comes to us by direct appeal from an order of the Leon County Circuit Court upholding the constitutionality of Section 563.06. We have jurisdiction for the appeal. Art. V, § 3(b)(1), Fla. Const.
[3] Related to the argument that Section 563.06(1) achieves these two objectives are the general assertions that the state may legitimately regulate the beer industry, and that these provisions are an integral part of the regulatory scheme necessary to carry out the state's program. These assertions are not seriously contested by Belk-James and need not be addressed to resolve the controversy. Similarly, we need not dwell on Belk-James' other challenges. It suggests here that equal protection of the law is denied by the regulation only of beer containers; however, that position is not supported by allegations or proof, which it had the burden to develop, showing that a distinction between packaging beer and other alcoholic beverages lacks a rational foundation. See Steigerwalt v. City of St. Petersburg, 316 So.2d 554 (Fla. 1975). It also suggests that Section 563.06(1) unduly interferes with interstate commerce a position wholly inconsistent with the Twenty-first Amendment to the United States Constitution. See California v. LaRue, 409 U.S. 109, 114, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).
[4] Belk-James acknowledges that these are permissible state objectives, but simply argues that Section 563.06(1) bears no reasonable relationship to them.
[5] The Division also argues that the "Florida" identification at the point of manufacturer reduces the likelihood that excess or out-of-season inventories of old beer will be "dumped" into the more constant beer demand states, such as Florida, by out-of-state distributors. This, too, is a proposition which might reasonably have persuaded legislators to enact the imprinting requirements.
[6] §§ 561.14-.19, Fla. Stat. (1975).
[7] See, for example, §§ 561.29 (license revocation), 562.32 (criminal penalties), 562.28 (seizure), and 562.16 (personal tax liability for violations), Fla. Stat. (1975).
[8] § 561.55, Fla. Stat. (1975).
[9] §§ 562.07 and 561.54, Fla. Stat. (1975).
[10] §§ 562.20 and 561.55, Fla. Stat. (1975).
[11] Section 562.41, Florida Statutes (1975), authorizes searches by Division employees, and other law enforcement officers, for the purpose of detecting violations of the Beverage Law.
[12] Golden v. McCarty, 337 So.2d 388 (Fla. 1976).
[13] Corn v. State, 332 So.2d 4 (Fla. 1976)