406 So.2d 1079 (1981)
The COCA-COLA COMPANY, FOOD DIVISION, POLK COUNTY, Florida, et al., Appellants,
v.
STATE of Florida, DEPARTMENT OF CITRUS, Appellee.
No. 57108.
Supreme Court of Florida.
June 4, 1981.
Rehearing Denied January 8, 1982.
*1080 E. Snow Martin of Martin & Martin, Lakeland, Ansley Watson, Jr. of Macfarlane, Ferguson, Allison & Kelly, Tampa, and C. Lee Cook, Jr., Alan I. Greene and David C. Bogan of Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., Chicago, Ill., for appellants.
Monterey Campbell of Campbell, Dunlap & Blakeman, Bartow, for appellee.
*1081 ADKINS, Justice.
This is an appeal from a decision of the Second District Court of Appeal specifically passing upon the validity of section 601.15, Florida Statutes (1977). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
On October 25, 1977, the Florida Citrus Commission, (hereinafter the commission), by order, adopted a rule amending Department of Citrus Rule Chapter 20-66. The new rule, subsection 20-66.04, (hereinafter the rule), provides that effective January 1, 1979, all processed 100% grapefruit products packed in retail containers in Florida are to be prominently identified by use of the word "Florida" or the "Florida Sunshine Tree" certification mark surrounded by the phrase, "A Product of the Florida Sunshine Tree." The rule also specifies certain requirements regarding the legibility, color, and placement of the words and certification mark. The order adopting the rule finds, among other things, that the rule serves the interests of the public and the industry, that it will increase the effectiveness of the Department of Citrus' advertising program, that grapefruit growers have expressed a need for Florida identification on processed products, and that evidence produced at hearings demonstrated that Florida identification will help achieve the goals enumerated in section 601.02, Florida Statutes (1977).
Upon adoption of the rule, a grapefruit products processors' association and individual members thereof petitioned the Second District Court of Appeal for review of the commission's action in adopting the rule. The petition asserted that the commission lacked statutory authority to promulgate the rule or, alternatively, that the rule violated provisions of the Federal and Florida Constitutions.
Initially, petitioners also contended that since the rule evidently applied to grapefruit products derived wholly or in part from grapefruit grown outside of the state, it was in violation of section 601.98, Florida Statutes (1977), which provides that it is unlawful to place a designation of Florida origin on citrus fruit products if any part thereof comes from outside the state. The department, however, made a statement, which the district court considered binding, that the rule applies only to processed grapefruit products packed in Florida which are derived entirely from grapefruit grown in Florida.
On the basis of the above statement, the district court affirmed the department's action, holding that the department has the implied statutory authority to adopt the rule, that said authority does not constitute an invalid delegation of legislative power, that the rule violates neither the federal nor state constitution, that evidence regarding increased competition from out-of-state grapefruit justifies the rule, and that the department's failure to prepare an economic impact statement did not invalidate the rule. See Florida Canners Association v. State Dept. of Citrus, 371 So.2d 503 (Fla. 2d DCA 1979). Petitioners then appealed the decision to this Court. Petitioners-below shall be referred to herein as appellants, and respondent-below referred to as appellee or department.
Appellants' first point on appeal is that appellee lacks statutory authority to compel a declaration of Florida origin on the labels of processed grapefruit products. We agree that the Florida Citrus Code of 1949 (hereinafter the code) does not expressly grant such authority, and so such power, if it is to be ascribed to appellee, must be implied. We have, in numerous cases, discussed when authority may properly be implied.
"The powers of this and similar agencies include both those expressly given and those given by clear and necessary implication from the provisions of the statute." City Gas Company v. Peoples Gas System, Inc., 182 So.2d 429, 436 (Fla. 1965). The implied powers attendant to those expressly given include those which are "indispensable or useful to the valid purposes of a remedial law", State ex rel. Railroad Commiss. v. Atlantic Coast Line R. Co., 60 Fla. 465, 54 So. 394, 397 (1911); those "necessary for the exercise of the [right] or the *1082 performance of the [duty]", Girard Trust Co. v. Tampashores Development Co., 95 Fla. 1010, 117 So. 786, 788 (1928); those "necessary to accomplish the [stated governmental purpose]", Hancock v. Karel, 127 Fla. 451, 173 So. 274, 275 (1937), citing Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, 792 (1919); and those "necessary to carry out the power or right and make it effectual and complete", Deltona Corporation v. Florida Public Service Commission, 220 So.2d 905, 907 (Fla. 1969). Thus to determine whether the commission has the implied authority to require declarations of origin, we must examine the code to determine both its purposes and the duties which it places on the commission. (For a comprehensive history of the code, see the Second District Court of Appeal's decision in this cause.)
Section 601.02, Florida Statutes (1977), provides, in part, the following regarding the purposes of the code:
Purposes.  This chapter is passed:
(1) In the exercise of the police power to protect health and welfare and to stabilize and protect the citrus industry of the state.
(2) Because ... the sale and distribution of said crop, affects the health, morals, and general economy of a vast number of citizens of the state who are either directly or indirectly dependent thereon for a livelihood, and said business is therefore of vast public interest.
(3) Because it is wise, necessary, and expedient to protect and enhance the quality and reputation of Florida citrus fruit and the canned and concentrated products thereof in domestic and foreign markets.
* * * * * *
(5) To stabilize the Florida citrus industry and to protect the public against fraud, deception, and financial loss through unscrupulous practices and haphazard methods in connection with the processing and marketing of citrus fruit and the canned or concentrated products thereof.
Section 601.10, in part, establishes the following regarding the powers of the department.
Powers of the Department of Citrus.  The Department of Citrus shall have and shall exercise such general and specific powers as are delegated to it by this chapter and other statutes of the state, which powers shall include, but not be confined to, the following:
(1) To adopt and, from time to time, alter, rescind, modify, or amend all proper and necessary rules, regulations, and orders for the exercise of its powers and the performance of its duties under this chapter and other statutes of the state, which said rules and regulations shall have the force and effect of law when not inconsistent therewith.
Section 601.15, which most directly relates to the rule, provides in part, as follows:
Advertising campaign; methods of conducting;
* * * * * *
(2) The Department of Citrus shall plan and conduct a campaign for commodity advertising, publicity, and sales promotion to increase the consumption of citrus fruits and may contract for any such advertising, publicity, and sales promotion service.
Section 601.15 assigns appellee certain duties which, when performed, are intended to increase the consumption of citrus fruits. The increased consumption helps achieve the goals of the act listed in section 601.02, Florida Statutes (1977).
The question then, in determining whether appellee has the implied authority to require designation of origin, is whether the rule is indispensable, useful or necessary in effecting the goal of increased consumption of Florida citrus. We think that it is. If citrus is not identified as being of Florida origin, then the money spent encouraging consumers to buy Florida citrus will be for naught. Those consumers favorably impressed with appellee's advertising campaign will be unable to determine which *1083 citrus is from Florida, and will be just as likely to purchase grapefruit from California, Arizona, Mexico, Brazil, etc., as from this state. The increasingly stiff competition facing our state from other citrus producing locales justifies this measure intended to promote consumption of Florida citrus. Appellee has been given extensive authority in this very important area, and we believe that it has the implied power, as part of its duty to promote Florida citrus, to order that grapefruit products grown and processed in this state be so identified.
We are likewise unconvinced by appellants' argument that the legislative history of the code demonstrates that the legislature expressly rejected compulsory declarations of Florida origin. Appellants point out that the legislature enacted in 1937, and then repealed in 1939, a statute compelling a declaration of Florida origin on processed citrus products. See chapter 17783, Laws of Florida (1937), and chapters 19261 and 19477, Laws of Florida (1939). Noting that the statutes upon which appellee relies for its implied authority for the rule existed prior to the above 1937 statute, appellants argue that had the legislature considered such implied authority to exist it would not have enacted the 1937 statute requiring a declaration of origin. Enactment of said statute, argue appellants, demonstrates that implied power to compel designation of origin did not exist and, rather, that the legislature had to expressly provide such. The repeal, two years later, of chapter 17783 evidences a clear legislative rejection of mandatory declarations of origin, claim appellants.
There are two flaws in appellants' reasoning. First, the 1937 enactment did not concern advertising, rather, it was intended to eliminate the practice of importing non-Florida citrus into the state and then shipping it out in a form indicating that it was a Florida citrus product. When the law was repealed in 1939, it was replaced by a statute prohibiting the shipment from Florida of non-Florida citrus fruit or juice in a manner tending to indicate in any way that said product was produced and canned in Florida. Thus, the enactment and repeal of chapter 17783 are of no consequence here, because said law pertained to mandatory labeling intended to deter unscrupulous packers, not to labeling intended for advertising purposes.
The second flaw in appellants' reasoning is that the legislative enactment and repeal of chapter 17783 was not really a grant and rejection of power at all. Rather, it was an exercise of concurrent jurisdiction shared by the legislature and the department. Certainly the two entities may share authority over a common area, and the legislature's actions in 1937 and 1939 need not be interpreted first, as an expression of sole authority to mandate labeling and second, as an express rejection of all forms of such labeling. Instead, borrowing language used in the district court of appeal's opinion herein, we believe that the legislature simply stepped into a field already occupied by appellee and then stepped out, leaving the matter again in the hands of appellee.
Appellants' second point on appeal is that the statutory authority for this rule, if such authority is found to exist (and we have so found), constitutes an invalid delegation of legislative power. The delegation is invalid, contend appellants, because it contains no appropriate standards, guidelines, or restraints and thus violates article III, section 1 of the Florida Constitution. We disagree.
We need not examine the provisions of the constitution prohibiting the delegation by the legislature of exclusively legislative powers, nor the reasoning whereby the authority to provide rules and regulations for the administration of the law may be delegated to an administrative agency. Both concepts have been thoroughly examined in numerous prior decisions of this Court. See, for example, State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969 (1908); Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789 (1919); Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978).
To resolve this issue, we must consider whether the commission is here given the power to decide what the law is to be or *1084 whether the code establishes policy and standards and guidelines to guide the agency in implementing legislatively directed law. If the former is the case, the delegation is unlawful; if the latter, it is unobjectionable on delegation grounds. We find, for the following reasons, that the delegation here complained of was legal.
First, the act is not couched in terms so vague and uncertain, nor so broadly drawn, that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement thereof, and the agency is not given the power to say what the law is. See D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977); Lewis v. Bank of Pasco County, 346 So.2d 53 (Fla. 1976); and Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974). The code clearly demonstrates that the legislature intends that the department plan and conduct an advertising and publicity campaign designed to increase consumption of Florida citrus products. Section 601.15 states that the department "shall" do such. It does not leave the department a choice of whether to use the revenues earmarked for advertising for such purposes nor a choice of whether to initiate an advertising campaign. The department is not given unbridled discretion to determine whether to advertise and how to use the funds derived from the tax imposed under section 601.15. All of the preceding are required or specified. Nor, focusing more closely on its implementation does the act lack minimal standards and guidelines for administration of the program established by the legislature.
Sections 601.15(2)(a)-(i) catalog the subjects on which the department is to disseminate information. They direct that the department inform the public, via advertising and publicity, of matters such as the nutritional importance of citrus, the laws of the state regulating the production and marketing of citrus, the added costs to producers resulting from those laws, the effect upon public health of a breakdown of the Florida citrus industry, and the like. Said sections provide the department definite guidelines for implementation of the legislatively established policy and purpose of section 601.15. The department may not determine what the law shall be, and a reviewing body is able to ascertain by reference to the code whether the agency is carrying out the legislature's intent.
Also relevant is section 601.10(1), which provides that the department is to have the following powers:
To adopt and, from time to time, alter, rescind, modify, or amend all proper and necessary rules, regulations, and orders for the exercise of its powers and the performance of its duties under this chapter... .
The department is thereby limited to adopting only rules and regulations which are proper and necessary to accomplish the legislature's stated objective, and may not stray afield as it pleases, exercising the unlimited discretion which is a hallmark of improper delegation. Section 601.10(1) provides the requisite definite, valid limitations on rules and regulations which may be enacted by the department.
The department has been given responsibility for advertising and promoting Florida citrus, and increasing the sales thereof. In delegating such authority to the department, the legislature has established guidelines and directives for implementation of the law. Should the need arise, the code provides a reviewing body an adequate basis for determining whether the department is properly carrying out the intent of the legislature. We therefore conclude that the delegation of authority to promulgate the rule is proper.
Appellants' third point on appeal is that the rule unconstitutionally deprives them of their property without due process of law. They argue that to justify an interference with the constitutionally protected right to pursue a lawful business, the state must show a proper exercise of its police power, and that such cannot be shown here.
Under the police power doctrine, the state may interfere with otherwise protected areas if the interfering regulation bears "a reasonable relationship to the public *1085 safety, health, morals, and general welfare." Stadnik v. Shell's City, Inc., 140 So.2d 871, 874 (Fla. 1962). In Belk-James, Inc. v. Nuzum, 358 So.2d 174 (Fla. 1978), the question was whether a requirement that all taxable malt beverages sold in Florida have the word "Florida" imprinted on the crown or lid thereof violated the due process clauses of the United States and Florida constitutions. Observing that the standard for evaluating a legislative "exercise of the police power in the area of economic regulation is whether the means utilized bear a rational or reasonable relationship to a legitimate state objective", Id. at 175, we held that the labeling requirement was justified as an aid in the collection of taxes on malt liquor and in ensuring that only wholesome beer is brought into the state. In so holding, we observed as follows:
The arguments advanced by Belk-James, which essentially question whether the best means of regulation has been chosen, can be seen as directed more to the wisdom of the legislation than to its asserted rationality. This inquiry, of course, is inappropriate for our judicial function.
Id. at 177.
The labeling requirement in the case sub judice, like that in Belk-James, bears a rational relationship to a legitimate objective; in this case, increased sales of Florida citrus. Whether it is the best means of achieving that goal is not important to our analysis.
Appellants argue that all police power regulations of the citrus industry which have heretofore been upheld by this Court have been based upon a showing that the rule was necessary to prevent fraud and deception. They also cite a case in which the Fourth District Court of Appeal held that economic considerations are an improper basis for exercise of the police power. See Florida Citrus Commission v. Hi-Acres Concentrate, Inc., 227 So.2d 707 (Fla. 4th DCA 1969), cert. denied, 241 So.2d 859 (Fla. 1970).
In Hi-Acres, the court held unconstitutional a rule adopted by the commission which required that composition-type containers of frozen concentrated citrus juice have an "easy open" top, observing:
The commission's determination that requiring the composite type can to have the easy open feature would benefit the citrus industry by increased sale of citrus juices, is simply a determination by such administrative agency that using such type containers would result in economic benefits to the industry. This alone is not a valid basis upon which such regulation can be justified.
Id. at 708. We disagree with the opinion in Hi-Acres to the extent that it holds economic considerations an improper basis for exercising the police power.
Police power based regulations of Florida's citrus industry have been upheld in many cases. See Sligh v. Kirkwood, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915); Snively Groves, Inc. v. Florida Citrus Commission, 23 F. Supp. 600 (N.D.Fla. 1938); Florida Citrus Commission v. Golden Gift, Inc., 91 So.2d 657 (Fla. 1956); and L. Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121 (1931). As noted by appellants, most sustained the validity of a rule because it was shown that said rule was needed to prevent fraud and deception. That does not mean, however, that a police power rule may not be based on economic considerations. In Sligh v. Kirkwood the United States Supreme Court, referring to the police power, noted:
It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health.
Id. 237 U.S. at 59, 35 S.Ct. at 502 (emphasis supplied).
In E.B. Elliot Adv. Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir.), cert. dismissed, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970), the United States Fifth Circuit Court of Appeals considered whether an ordinance prohibiting commercial advertising signs in certain areas and regulating them in others was a proper exercise of the police power and observed:

*1086 Ordinance No. 63-26 is apparently designed to accomplish two ends: to promote highway safety on the expressway system of Dade County and to improve the beauty of the land surrounding these expressways thus to maintain and increase the attractiveness of the area to tourists, and residents alike, and thus influence the economic prosperity of the county. There can be no doubt but that these objectives are constitutionally permissible under the police power of the State of Florida.
Id. at 1151 (emphasis supplied).
In Johnson v. State, 99 Fla. 1311, 128 So. 853 (1930), the constitutionality of an act making unlawful the obstruction or resistance of an authorized inspector from the department of citrus in the performance of his duties was questioned. This Court held that the act was a proper exercise of the police power, stating:
[T]he purpose of the act is within the police power of the state. The protection of a large industry constituting one of the great sources of the state's wealth and therefore directly or indirectly affecting the welfare of so great a portion of the population of the state is affected to such an extent by public interest as to be within the police power of the sovereign.
Id. 128 So. at 857. See also C.V. Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248 (1937).
In light of the foregoing and of the indisputably important role that the citrus industry plays in this state's economy, we hold that the rule under consideration is a proper exercise of the state's police power.
Nor do we find the rule to be an unjustifiable infringement of the appellants' rights, i.e. an unnecessary exercise of the police power. Appellants argue that if a Florida identification will actually increase sales of citrus products, then producers and sellers will voluntarily mark their products in that fashion. Hence, they reason, the rule is unnecessary, and the goals thereof may be achieved without this unjustifiable infringement. They cite State v. Leone, 118 So.2d 781 (Fla. 1960), for the proposition that if the legislative goals of an act can be accomplished without any infringement upon a party's rights, then infringement, if it occurs, is unjustifiable.
In Leone, this Court struck a police power regulation requiring that retail drug stores be under the constant supervision of a licensed pharmacist. The opinion therein noted that the goal of the statute, that controlled drugs and medical supplies be dispensed only by those with proper training, could be achieved with less infringement on individual rights than was being done.
If there is a choice of ways in which government can reasonably attain a valid goal necessary to the public interest, it must elect that course which will infringe the least on the rights of the individual.
Id. at 785. We do not think, however, that the valid goal in the case at bar may be reasonably attained with less infringement than is presently being imposed.
Appellants assert that their interests and those of the department are the same, and that no regulation is needed. They argue that if a "Florida" label will increase sales, they will certainly mark their products with such. We, however, do not think that appellants' interests exactly parallel those of the department. The department's goal is to achieve the maximum sales possible of Florida citrus products. Several of the appellants, on the other hand, have holdings and dealings in other regions as well as in Florida. While they too desire to maximize sales, their particular interests might involve balancing output from a number of states or countries. An enterprise with interests and commitments spanning the nation and even the world cannot place the interests of a single state foremost on its list of priorities, and cannot be expected to always do that which is best for Florida. Thus appellants' and appellee's interests are not synonymous, the rule is needed and is not an unnecessary infringement, and we hold that the rule is reasonably related to attainment of the stated governmental objective.
*1087 Appellants' next point on appeal is that the rule impermissibly abridges their first amendment rights. In so arguing, appellants first contend that the labeling mandated by the rule compels that they speak and adopt the statements of the state of Florida and become a messenger therefor. We disagree. They are simply required to indicate the origin of their product, if it originated in Florida. They are not being forced to trumpet the superiority or virtues of Florida citrus, and to suggest that this labeling requirement forces them to spread the "Florida message" exaggerates the rule's effect. Appellants are merely being required to provide a factual statement which, if necessary and proper as this one is, is not an improper invasion of their first amendment rights.
On the same point appellants next contend that the state may not tell anyone what to say or think, and that the rule improperly forces appellants to express an opinion. We agree that the state may never force one to adopt or express a particular opinion:
If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.
West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943) (emphasis supplied) (footnote omitted). We do not, however, agree that the mandatory labeling required by the rule forces appellants to confess their faith in a matter of opinion. Again, we note that appellants are not being required to agree with or echo the content and theme of Florida's citrus advertising campaign. Rather, they are simply being required to indicate that the product being sold came from Florida, so that those consumers desiring Florida-produced citrus will be able to purchase such. Stamping a container "Florida" is not expression of an opinion. It is an expression of fact, similar to listings of ingredients and the like. The strictures of Barnette, condemning forced adherence to opinions, are inapplicable here.
Appellants also cite the United States Supreme Court's decision in Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), as support for their position that this mandatory labeling is an unlawful forced expression of opinion. In Wooley, a Jehovah's Witness challenged a New Hampshire statute requiring that automobile license plates carry the state motto, "Live Free or Die", which he found morally, religiously, ethically and politically abhorrent. The plaintiff had been prosecuted and jailed for covering the spot where the motto was stamped on his license plate. Holding that the state could not require that one display such a motto, the Supreme Court noted, in part, as follows:
We are thus faced with the question of whether the State may constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public. We hold that the State may not do so.
* * * * * *
New Hampshire's statute in effect requires that appellees use their private property as a "mobile billboard" for the State's ideological message  or suffer a penalty, as Maynard already has... . The First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable.
Id. at 713-15, 97 S.Ct. at 1434 (citations omitted).
We do not agree with appellants that the holding in Wooley compels that we strike down the rule. The state is not requiring that appellants disseminate an ideological message nor that they express a view or opinion on a subject on which there can be differing positions. Appellants are merely *1088 being required to include a factual statement of origin. Were the state requiring a message such as "Florida is Best", "Florida Citrus is Superior", or the like, the Wooley rationale might apply; as things stand, it does not.
Still contending that the rule violates the first amendment, appellants next assert that the state may not interfere with an otherwise protected area simply because the interests and speech involved are of a commercial nature. We agree that commercial speech is also protected, and that with certain exceptions, an entity may not be compelled to convey a message simply because that message is in a commercial context. When there is a first amendment interest at stake in commercial speech, that interest must be balanced against the public interest served by the regulations. Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).
Balancing the competing interests here, we are of the opinion that the public's interest in protecting and promoting Florida's citrus crop justifies the slight infringement on appellants' rights. The state is neither attempting to stop the free flow of information nor to prevent appellants from expressing themselves on any subject. It is simply requiring that containers be marked with a small, factual, statement of origin, on the top or bottom of the container if not the label. The interference with first amendment rights is slight and, as previously noted, the interest served great.
Finally, still regarding the first amendment argument, we do not believe that there exist less restrictive alternatives for accomplishing the goals of the rule. The voluntary program of labeling suggested by appellants is not feasible; if they are opposing such labeling this strenuously in court, they certainly would not adopt it voluntarily. The rule is as unrestrictive as is possible under the circumstances.
Appellants' final point on appeal is that the rule is invalid because it is not supported by competent, substantial evidence and that the facts require that it be set aside as a matter of law. They contend that no hearing was held on the rule as it has now been interpreted by the district court of appeal and that at the time evidence was taken, the growers thought that the rule would stop the importation into Florida of citrus for mixing with Florida citrus. We do not find such arguments convincing. While the rule will not stop such importation, it will prevent such mixtures from being marketed as purely Florida citrus. Furthermore, even if the rule was not fully understood by growers at the time evidence was taken thereon, they did, nevertheless, have an opportunity to be heard. The rule has not been changed, and we cannot strike it simply because certain parties may have misinterpreted its purpose or effect.
Appellants further contend that this improperly passed rule will encourage processors to import citrus from other states to mix with Florida citrus in order to avoid the labeling requirement, and that insufficient evidence was presented at hearings on the rule to show that it is needed or will be effective. The district court of appeal ably responded to these assertions in its opinion:
An exercise of police power will not be struck down because a law or regulation is unwise, improper, or out of harmony with a particular school of thought. Williamson v. Lee Optical of Okl., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). We feel that the evidence in the record as to the anticipated increase in competition from non-Florida grapefruit is sufficient to justify Respondent's decision to require that Florida grapefruit products be identified in the marketplace. The wisdom of that decision is not a matter of judicial concern.
Florida Canners Association at 519.
Having considered each of the points on appeal raised by appellants, and having found that none warrant reversal of the Second District Court of Appeal's opinion herein, we hereby affirm said court's decision.
*1089 SUNDBERG, C.J., and OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., dissents.