370 So.2d 1132 (1979)
DEPARTMENT OF BUSINESS REGULATION et al., Appellants,
v.
NATIONAL MANUFACTURED HOUSING FEDERATION, INC., Etc., et al., Appellees.
No. 53065.
Supreme Court of Florida.
April 26, 1979.
*1133 Jim Smith, Atty. Gen., and Martin S. Friedman, Asst. Atty. Gen., and Dennis LaRosa, Staff Counsel Department of Business Regulation, Tallahassee, for appellants.
Edward S. Jaffry, of Horne, Rhodes, Jaffry, Stephens, Bryant, Horne & Chapman, Tallahassee, for appellees.
Wilbur E. Brewton, of Taylor, Brion, Buker & Greene, Tallahassee, for James A. Glisson; and Chester E. Clem, Jr., Law Offices of Jackson & Clem, Vero Beach, for Federation of Mobile Home Owners of Florida, Inc., intervenors/appellants.
Steven A. Anderson, of Anderson, Thorn, Grose & Quesada, Tampa, as a member for the State Mobile Home Tenant-Landlord Commission; and Jack M. Skelding, Jr., of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, for Florida Mobilehome and Recreational Vehicle Ass'n, amici curiae.
BOYD, Justice.
This appeal is from a judgment of the Circuit Court of the Second Judicial Circuit, in and for Leon County. It comes directly to us because the trial court, in announcing its judgment, declared a state law invalid. Art. V, § 3(b)(1), Fla. Const. The proceeding was begun when the appellees[1] sought declaratory and injunctive relief from the effect of chapter 77-49, Laws of Florida.[2] The action was defended by the governor, the attorney general, and the Department of Business Regulation.[3] The plaintiffs based their claim for relief upon three grounds: that the statute unlawfully delegates legislative authority; that it deprives mobile home park owners of property without due process of law; and that it constitutes a denial of equal protection of the laws. In its order enjoining implementation of the statute, the court declared it unconstitutional on the first two grounds stated. The court did not address the equal protection argument.
Section 1[4] of the act contains a recitation of legislative findings and a statement of the purposes of the enactment:
The Legislature finds that there exists an emergency in rental accommodations in *1134 mobile home parks. The Legislature further finds that this condition, coupled with the inordinate expense of relocating a mobile home causes tenants in such parks to be placed in an unequal bargaining position with respect to increases in charges imposed by the owners or managers of such parks. The Legislature further finds that this inequality can only be alleviated by the enactment of reasonable legislative restraints which provide both a reasonable return [on] a park owner's investment and a safeguard to tenants against exorbitant rental or service charges.
To accomplish this purpose, section 4 of the act creates the State Mobile Home Tenant  Landlord Commission to regulate rental increases in mobile home parks. The commission is placed within the Department of Business Regulation.[5]
Section 8[6] sets out the essence of the regulatory scheme. Subsection (1) provides that if a park owner proposes a charge increase, in the form of an increase in rent or service charges or a decrease in service, "in any calendar year in excess of the net United States Department of Labor Consumer Price Index increases since the last rental increase," then, upon petition of fifty-one percent of the park tenants the commission is required to act. It is to hold a hearing to determine whether the charge increase is "unconscionable or not justified under the facts and circumstances of the particular situation." Subsection (2) provides a list of certain costs that may be passed on to the tenants if they are reasonable and justified.[7] Subsection (3) provides that by November 1 of the year preceding a charge increase, the park owner must notify the tenants of the proposed amount of any increase. Without notice no increase is to be allowed.
Section 9, subsection (1),[8] requires that the hearings be held in accordance with chapter 120, Florida Statutes (1977), the Administrative Procedure Act, and gives the commission the power to rule on a contested charge increase in one of four ways. It shall require the owner "to either reduce the rental or service charges to a rate set by the commission, to continue rental or service charges as they existed under the former lease or agreement, to increase the rental or service charges to a rate set by the commission or to increase the rental or service charges" to the rate proposed by the owner.
Section 9, subsection (2), gives the commission power to adopt rules governing its proceedings and directs the commission to adopt rules providing that increases collected but subsequently held to be unauthorized "shall be either returned to the tenants or credited toward future rental charges."
Section 11 permits appeal of the decisions of the commission to circuit court.[9] An increase approved by the commission, however, is to be paid by the tenant. If the increase is overturned on appeal, it is to be returned or credited. If the park owner appeals, then the proposed charge, even if disapproved by the commission, must be paid but is to be deposited in the court registry. The court is authorized to make disbursements of such funds to the park owner pending the appeal if the owner is in danger of suffering hardship, such as losing the premises.[10]
The commission, under the legislative plan, is to be composed of seven members, including two mobile home park owners or operators, two mobile home park tenants, and three members of the general public.[11]
For the following two reasons, we hold that the circuit court was correct in ruling that chapter 77-49 is unconstitutional.
*1135 The court held that subsections (1)(a) and (2)(a) of section 83.784, Florida Statutes (1977), unlawfully delegate legislative power to an administrative body. As was made abundantly clear by our decision in Askew v. Cross Key Waterways, Nos. 52,251 52,252 (Fla. Nov. 22, 1978), announced in an opinion by Justice Sundberg, the doctrine against delegation of legislative power is of continuing vitality in Florida. We held that the legislature must take heed of article II, section 3, Florida Constitution, which provides: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other two branches unless expressly provided herein." The opinion explained why strict adherence to the above constitutional admonition is imperative:
A corollary of the doctrine of unlawful delegation is the availability of judicial review. In the final analysis it is the courts, upon a challenge to the exercise or nonexercise of administrative action, which must determine whether the administrative agency has performed consistently with the mandate of the legislature. When legislation is so lacking in guidelines that neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature in its conduct, then, in fact, the agency becomes the lawgiver rather than the administrator of the law.
Askew v. Cross Key Waterways, slip. op. at 9-10.
The interests of a mobile home park owner and a mobile home park tenant necessarily compete. Similar to the posture of a buyer and seller in the commercial arena, a mobile home park tenant has as his goal affordable living accommodations, while a park owner endeavors to maximize his profits. Rent control legislation seeks a balance between these competing interests by stabilizing rentals under emergency conditions in order to prevent extortionate increases in rent resulting from housing shortages, while at the same time allowing landlords a fair and equitable return upon their investments. City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764, 767 (Fla. 1974) (Dekle, J., concurring specially). Because of the fundamental nature of these concerns and the pervasiveness of mobile home living in Florida, the point where rent control legislation strikes this balance is undoubtedly of great public moment.
The criteria for determining the validity of rental or service charge increases in subsections (1)(a) and (2)(a) of section 83.784 are constitutionally defective because they charge the commission with the fundamental legislative task of striking this balance between mobile home park owner and mobile home park tenant, without any meaningful guidance. See Askew v. Cross Key Waterways, slip op. at 10. The subsections provide:
(1)(a) Upon petition of 51 percent of the tenants of any dwelling units in a mobile home park who will be subject to a rental or service charge increase or a decrease in services in any calendar year in excess of the net United States Department of Labor Consumer Price Index increases since the last rental increase, the commission shall hold a hearing at the mobile home park or at such other facility selected by the commission, so long as it is reasonably accessible to all parties, at a date to be set by the commission, to determine whether or not the rental or service charge increase or a decrease in services is so great as to be unconscionable or not justified under the facts and circumstances of the particular situation.
.....
(2)(a) The increased costs to the owner of a mobile home park attributable to:
1. Increases in utility rates;
2. Property taxes;
3. Fluctation [sic] in property value;
4. Governmental assessments;
5. Cost of living increases attributable to and relevant to incidental services, normal repair, and maintenance; and
6. Capital improvements not otherwise promised or contracted for *1136 may be passed on to the tenants or prospective tenants in the form of increased rental or service charges if such increases are reasonable and justified under the facts and circumstances of the particular case.
The terms "unconscionable or not justified under the facts and circumstances" in (1)(a), and the terms "reasonable and justified under the facts and circumstances of the particular case" in (2)(a), are not accompanied by any standards or guidelines to aid a court or administrative agency in ascertaining the true legislative intent underlying the act. The legislature may have wanted to afford the word "unconscionable" in (1)(a) a liberal construction, so as to circumscribe narrowly a park owner's ability to pass on costs to tenants beset by inflation. As written, the act gives no hint whether this is a correct interpretation. It is thus left to the "unbridled discretion or whim"[12] of the commission to formulate basic legislative policy. See D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977); Lewis v. Bank of Pasco County, 346 So.2d 53 (Fla. 1977); Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974); Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968); State v. Atlantic Coast Line R.R., 56 Fla. 617, 47 So. 969 (1908).
Moreover, "unconscionability" is a term which has meaning in the context of an equitable proceeding in our courts between two adverse parties. A chancellor sitting in equity is guided in the exercise of his discretion in this regard by sound principles of law which have been articulated and applied on a case-by-case basis over a long period of time during the development of our rich common law heritage. See, e.g., Peacock Hotel, Inc. v. Shipman, 103 Fla. 633, 138 So. 44 (1931); Point East One Condominium Corp. v. Point East Developers, Inc., 348 So.2d 32 (Fla. 3d DCA 1977); cf. Osceola Groves, Inc. v. Wiley, 78 So.2d 700 (Fla. 1955) (class action unavailable because of no community of interests). No such guiding principles are supplied by the legislature here. Furthermore, the joining of that term with the phrase "or not justified under the facts and circumstances of the particular situation" makes the legislative standard even more nebulous.
In Sarasota County v. Barg, this Court invalidated portions of the act creating the Manasota Key Conservation District. Employing language similar to that contained in section 83.784, the act prohibited "undue or unreasonable dredging, filling or disturbance of submerged bottoms," as well as "unreasonable destruction of natural vegatation." In finding the above provisions violative of article II, section 3, Florida Constitution, the Court stated:
The Act does not contain any standards or guidelines to aid any court or administrative body in interpreting these terms. The determination of what conduct falls within the proscription of these ambiguous provisions is left to the unbridled discretion of those responsible for applying and enforcing the Act. This amounts to an unrestricted delegation of legislative authority... .
302 So.2d at 742. See also City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla. 1972).
We further decide that chapter 77-49, Laws of Florida, is unconstitutional because it exceeds the authority ordinarily granted by rent control legislation. When such legislation is enacted, various constitutionally protected rights are put in jeopardy. City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d at 804. Among these are a person's right to contract and the right to pursue a lawful business, both recognized under the fifth and fourteenth amendments to the United States Constitution and under article I, section 2 of the Florida Constitution. Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 884 (Fla. 1974). These are not, of course, absolute rights. They are subject to reasonable restraint in the interest of the public welfare. Id. Legislative limitations upon the exercise of these liberties are constitutional if they rationally relate to a valid state objective. Knowles v. Central Allapattah Properties, Inc., 145 Fla. 123, 198 So. 819 (1940).
*1137 The authority of the state under its police power to impose reasonable regulations upon mobile homes and mobile home parks is unquestioned. Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d at 884. To this end, the state has a permissible interest in ameliorating the scourge of exorbitant rentals caused by housing shortages. During lean years, the poor are hard pressed to find adequate, affordable housing. Their frustrated efforts exacerbate already widespread social problems.
What tips the scales against chapter 77-49 is its open-ended nature. Rent control laws are restricted in scope and duration to instances constituting an emergency. City of Miami Beach v. Forte Towers, Inc.; City of Miami Beach v. Fleetwood Hotel, Inc. While we make no attempt here to delimit the term "emergency," it bears noting that prior decisions have defined it narrowly. Chapter 77-49 is not so restricted; it may continue forever without any required reassessment of circumstances, thereby permanently impairing constitutional rights. In view of the severe limitations placed upon this type of legislation, and absent a specific time frame circumscribing its operation, chapter 77-49, Laws of Florida, exceeds the permissible scope of state authority to regulate rental charges.
The judgment of the circuit court is affirmed.
ADKINS, OVERTON, SUNDBERT and ALDERMAN, JJ., concur.
ENGLAND, C.J., concurs in result only.
HATCHETT, J., dissents.
NOTES
[1] The appellees are National Manufactured Housing Federation, Inc., a nonprofit corporation, and De Anza National Mobile Estates, Ltd., a California limited partnership authorized to do business in Florida.
[2] The act is codified as sections 83.770-.794, Florida Statutes (1977).
[3] The Federation of Mobile Home Owners of Florida, Inc. and James Glisson, a member of the State Mobile Home Tenant  Landlord Commission, intervened in support of the defendants.
[4] § 83.770, Fla. Stat. (1977).
[5] Id. § 83.776.
[6] Id. § 83.784.
[7] There is apparent confusion as to the interrelationship between subsections (1) and (2) of section 83.784 and the scope of the commission's authority to approve or disapprove the cost items delineated under subsection (2). However, because of our decision today we need not deal with this issue.
[8] § 83.786, Fla. Stat. (1977).
[9] Id. § 83.790.
[10] Id. § 83.763(3).
[11] Id. § 83.776(1).
[12] Dickinson v. State, 227 So.2d 36, 37 (Fla. 1969).