392 So.2d 1296 (1980)
FRATERNAL ORDER OF POLICE, METROPOLITAN DADE COUNTY, LODGE No. 6; Professional Police Officers Association, Inc,; Carl Gallo; and Crg Productions, Inc., a Florida Corporation, Appellants,
v.
DEPARTMENT OF STATE, State of Florida, and the Honorable Jessie McCrary, As Secretary of State, Appellees.
No. 57970.
Supreme Court of Florida.
November 6, 1980.
Rehearing Denied February 20, 1981.
*1297 Edward S. Jaffry of Horne, Rhodes, Jaffry, Horne & Carrouth, Tallahassee, for appellants.
Jim Smith, Atty. Gen., and Martin S. Friedman, Asst. Atty. Gen., Tallahassee, for appellees.
SUNDBERG, Chief Justice.
Appellants, law enforcement associations and professional fund-raisers, bring this appeal attacking the constitutionality of the "Law Enforcement Funds Act," codified as *1298 part II, chapter 496, Florida Statutes (1979), which requires any person or group soliciting contributions on behalf of law enforcement organizations to register with the Florida Department of State and comply with the regulatory mandates of the act. The trial court upheld the act's constitutionality except for subsections (8) and (9) of section 496.31, which the court found violative of plaintiffs' equal protection and due process rights. Direct appeal has been taken to this Court pursuant to article V, section 3(b)(1) of the Florida Constitution. We affirm.
In 1978 the Florida Legislature enacted a comprehensive act[1] regulating "organizations" which solicit contributions for or on behalf of any association of law enforcement personnel. The definitional section of the act, section 496.21, provides in pertinent part:
(1) "Organization" means a group or person which is or holds itself out to be soliciting contributions from the public by the use of any name of any law enforcement person, body, agency, or association after October 1, 1978... .
.....
(3) "Law enforcement" means the words "police," "policemen," "policeman," "sheriff," "deputy sheriff," or any combination of words used to indicate that a person, body, agency, or association is affiliated in any way with a person, body, agency, or association of law enforcement personnel.
.....
(5) "Professional solicitor" means any person who, for a financial or other consideration, solicits contributions for, or on behalf of, an organization, whether such solicitation is performed personally or through his agents, servants, or employees or through agents, servants, or employees specially employed by or for an organization, who are engaged in the solicitation of contributions under the direction of such person; or a person who plans, conducts, manages, carries on, or advises an organization in connection with the solicitation of contributions; however, no agent, servant, or employee of a professional solicitor shall be deemed to be a professional solicitor... .
The solicitation of law enforcement funds act imposes a number of requirements upon professional solicitors. Every organization which intends to solicit contributions must first register with the Department of State and obtain a certificate of registration. § 496.24, Fla. Stat. (1979). In obtaining this certificate the soliciting organization must file a registration statement disclosing certain information prescribed in section 496.23 and in addition must post a bond for the duration of registration pursuant to section 496.24. Soliciting organizations are prohibited from engaging in practices which in general might mislead the public. The prohibited practices are enumerated in section 496.31 and bar solicitors from representing to the public for example, that registration with the Florida Department of State constitutes official endorsement, that the solicited proceeds will be used for charitable purposes if such is not the case, or that contributions are being solicited on behalf of a law enforcement organization when that organization has not authorized the solicitation. In addition, a solicitor is not permitted to use the word "charity" or "charitable" as part of its name nor to solicit funds without identifying himself as a professional solicitor. Section 496.31 also contains the provisions which were found by the trial court to be unconstitutional. These provisions, subsections (8) and (9) of section 496.31, provide:
(8) A professional solicitor's total fee shall not be in excess of 25 percent of the gross contributions which he solicits. All fundraising costs shall be included in such gross contributions.
(9) Any organization registered and certified pursuant to this part shall not expend in excess of 25 percent of its gross contributions for fundraising costs.
*1299 Finally, the solicitation act provides criminal penalties for the violation of its provisions and for the filing of an application containing false information or for the use of solicitation funds for purposes other than those stated in the registration certificate. § 496.33, Fla. Stat. (1979).
Appellants instituted their general attack upon the constitutionality of the solicitation of law enforcement funds act by a suit for declaratory and injunctive relief. Their complaint alleges that the act violates the equal protection clauses of the Florida[2] and United States Constitutions[3] on the basis it arbitrarily subjects appellants to registration and licensing requirements that are not imposed on persons or organizations engaged in the same business activity (the solicitation of funds from the public) for other non-charitable organizations composed of, for example, firefighting personnel and postal workers; that the act constitutes an unlawful prior restraint on their constitutional guarantee to freedom of speech[4] and that the solicitation act unlawfully and without due process interferes with their constitutionally protected right to pursue a lawful business.[5]
At trial appellants offered testimony from Nelson Perry, president of the Fraternal Order of Police, Metropolitan Dade County Lodge No. 6, and former president of the Dade County Police Benevolent Association.[6] He testified that the funds raised for the Fraternal Order of Police were used to publish a magazine entitled "Dade County PBA Bolo," to support organizations such as Little League baseball and the Kiwanis League, to assist police officers and their families in times of financial distress because of illness or injury, to provide for police awards and generally to support law enforcement activities.[7] Perry stated that to raise funds for his organization he found it necessary to employ professional solicitors.[8] He said that it was impossible to employ a solicitor who would perform the services required in soliciting funds for less than 25% of the gross contributions as required under subsection 496.31(8), Florida Statutes. Typically, he said, 40% of the gross contributions go to the solicitor for his fee and fundraising costs, with 30% of the remaining gross contributions going to support the magazine and 30% for the other mentioned activities of the organization. Carl Gallo, a professional solicitor and one of the plaintiffs in this suit, testified that in his experience raising funds for police organizations or comparable firefighters or postal worker organizations, he has never been able to keep fundraising costs under 25% of the gross contributions collected as is required by subsection 496.31(9), Florida Statutes (1979). He stated that on the average the fundraising costs, including overhead, operating and possible entertainment expenses total about 60% of the gross contributions. Out of the remaining 40% net profit he would receive, depending on the agreement, up to one-half or 20% of the gross contributions with the remaining 20% of the gross going to the organization for which funds were solicited. The vice-president of CRG Enterprises, Inc., a fundraising organization and another plaintiff in this suit, corroborated Gallo's testimony with regard to the activities and typical fee arrangement *1300 of the professional solicitor. He stated that it would be impossible for his organization to continue to solicit funds for police organizations under the new statutory 25% limit on fundraising costs. The impossibility of meeting the 25% limit was also attested to by another professional solicitor whose fundraising activities included soliciting contributions for charitable organizations. He said that although he was registered under the charitable solicitations act, part I of chapter 496, Florida Statutes, and was thus subject to a part II limitation on his fee of 25% of the gross contributions solicited,[9] he could meet the 25% limit only with regard to special events such as dances, but could not otherwise conduct a general fundraising operation.
The state countered with testimony from Detective Arthur Trollinger who had investigated alleged misrepresentation and pressure tactics used by some solicitors in obtaining contributions for various organizations including church groups and labor unions as well as police associations. He testified that fraudulent claims were often made concerning the use of the funds and their tax deductability. Based on his investigations, he said that a frequent "sales pitch" included the suggestion that a person might be treated advantageously when stopped by a police officer if his car had a decal or sticker on it showing that he had contributed to a police organization. Glen Birchfield, a former professional solicitor, also testified for the state and described how in a typical pitch he would tell the individual solicited that the funds were being collected for the family of an officer who was killed in the line of duty. He said he was more successful in soliciting money for law enforcement organizations than for firefighter or church organizations because of the greater sympathy people feel toward police officers and because of the sticker pitch suggesting favorable treatment from the police.
The state also presented testimony from a number of individuals who had been solicited for contributions to various police organizations and said they were told that in return for a contribution they would receive a decal or sticker which would let the police know that they were "on their side." On rebuttal the plaintiffs produced several police officers who testified that the complaints which they received regarding improper solicitation practices usually involved solicitors who did not represent legitimate police organizations.
In rejecting the appellants' contentions that the law enforcement solicitations act was unconstitutional in whole, the trial court made the following analysis:
The Court finds from the evidence presented that solicitations on behalf of law enforcement organizations present a greater potential for abuse than solicitations for other organizations. Solicitation of funds on behalf of law enforcement organizations are distinguishable from other fund raising activities for the reason that they are fraught with the possibility that the individuals being solicited will be subjected to a feeling of intimidation because of the nature of the organization involved. Also, it is likely that those being solicited may believe that their contributions will bring them favors with the members of the organizations involved. Based upon this finding the Court concludes that there is a rational basis to sustain the classification in the statute in encompassing only law enforcement regulated organizations. These problems do not exist generally in regard to other solicitations... .
Therefore, to the extent that the enactment addresses the potential harms found above to exist, it is constitutional. A large portion of the enactment does address these problems and is, therefore, proper.
The trial court went on to say:
However, the enactment in subsections (8) and (9) of the prohibited acts section (F.S. [§] 496.31) places limitations on fees and costs to be expended by those who *1301 solicit funds on behalf of law enforcement organizations. The Court cannot find that these particular restrictions have any relationship to the problems that distinguish law enforcement organization solicitations from other solicitations. The police power of the State may be used only against the right to engage in business when the means sought to regulate are reasonably related to the potential harm and where the entity being regulated is distinguishable because of that potential harm. See: State v. Leone, 118 So.2d 781 (Fla. 1960). If the placement of limitations on fees and costs to be expended in soliciting funds is a proper legislative enactment there is nothing in the evidence presented that makes that need unique to the solicitation of contributors for law enforcement organizations as opposed to solicitations for other organizations. For that reason subsections (8) and (9) of Florida Statutes Section 496.31 are unconstitutional in that they violate the plaintiffs' equal protection and due process rights.
The trial court also concluded that appellants' rights of free speech were not infringed because the primary activities of the organizations regulated by the statute do not involve activities protected by the first amendment. Accordingly, the court declared that the solicitations act was constitutional except for subsections 496.31(8) and (9) which the court declared unconstitutional and severable from the rest of the act under the principles set forth in State v. Calhoun County, 127 Fla. 304, 170 So. 883 (1936). Hence, the court enjoined enforcement of the provisions of subsections (8) and (9).
In the appeal before this Court appellants again assert that the solicitations act is constitutionally infirm.[10] They do not contend that the state is without the power to enact valid legislation regulating the solicitation of funds from the public for non-charitable purposes. But, they contend, it violates appellants' equal protection right to impose such regulation on them while at the same time permitting others who do not represent any law enforcement association to engage in the same activity without any such regulation, registration or restraint. Appellants also contend that their due process rights have been compromised because of the unreasonable interference with their constitutionally protected right to pursue a lawful business. They maintain that there is no factual support in the record to establish the trial court's findings that individuals solicited have been subjected to intimidation or that it is likely that those being solicited may believe that their contribution will bring them favors. Even if these findings may be sustained from the record, appellants nonetheless maintain that registration of solicitors along with the other regulatory aspects of the act do not logically relate to the curing of such abuses.
First, we have no difficulty in concluding that the overall regulatory provisions of the solicitations act comply with due process. Appellants assert that the right to engage in a lawful business is a fundamental right which may be regulated under the state's police powers only when necessary to the achievement of a compelling state interest, citing State v. Leone, 118 So.2d 781 (Fla. 1960). In State v. Leone this Court held that the right to pursue a lawful business is constitutionally protected but also recognized that this right may be limited when the benefit to the public justifies it. The right to earn a livelihood by engaging in a lawful occupation or business is subject to the police power of the state to enact laws which advance the public health, safety, morals or general welfare. State ex rel. Hosack v. Yocum, 136 Fla. 246, 186 So. 448 (1939). With regard to the regulation of business interests we recently stated in Department of Business Regulation v. National Manufactured Housing Federation, Inc., 370 So.2d 1132 (Fla. 1979):

*1302 Among [the constitutionally protected rights] are a person's right to contract and the right to pursue a lawful business, both recognized under the fifth and fourteenth amendments to the United States Constitution and under article I, section 2 of the Florida Constitution. Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 884 (Fla. 1974). These are not, of course, absolute rights. They are subject to reasonable restraint in the interest of the public welfare. Id. Legislative limitations upon the exercise of these liberties are constitutional if they rationally relate to a valid state objective. Knowles v. Central Allapattah Properties, Inc., 145 Fla. 123, 198 So. 819 (1940).
370 So.2d at 1136 (emphasis supplied).
In Belk-James, Inc. v. Nuzum, 358 So.2d 174, 175 (Fla. 1978), a case involving a due process attack on a statute regulating taxable malt beverages possessed for sale in Florida, we said, "[T]he proper standard by which we must evaluate the Legislature's exercise of the police power in the area of economic regulation is whether the means utilized bear a rational relationship to a legitimate state objective."
In the case at bar it is apparent that the legislature was concerned with the perpetration of deceptive or coercive solicitation practices upon the public. In enacting the solicitations act to protect the public, the legislature sought to further a legitimate state interest. And in prohibiting certain acts and imposing registration and disclosural requirements as the means by which to achieve these objectives, we cannot say that the legislature acted irrationally. The legislature is vested with wide discretion to determine the public interest and the measures necessary for its achievement. Holley v. Adams, 238 So.2d 401 (Fla. 1970). The fact that the legislature may not have chosen the best possible means to eradicate the evils perceived is of no consequence to the courts provided that the means selected are not wholly unrelated to achievement of the legislative purpose. A more rigorous inquiry would amount to a determination of the wisdom of the legislation, see Belk James, Inc. v. Nuzum, supra, and would usurp the legislative prerogative to establish policy. We hold that the regulatory measures imposed under part II of chapter 496 bear a rational relationship to the restraint of abusive or improper solicitation practices and are calculated to achieve a valid state interest.
We also have no difficulty in sustaining the solicitations act against appellants' equal protection attack. They contend that the proper standard to apply in this case is the strict scrutiny test rather than the traditional rational relation test because the legislative classification burdens their "fundamental" right to pursue a lawful business. We reject this contention. Although the asserted right is a constitutional right, it is not the species of fundamental right which invokes the strict scrutiny standard under the equal protection clause. See Newman v. Carson, 280 So.2d 426 (Fla. 1973). Thus the separate treatment of solicitation of contributions for law enforcement associations does not constitute an invidious discrimination if there is a rational basis for the separate treatment. Appellants also assert, however, that the trial court's conclusion that individuals solicited for contributions to law enforcement organizations are more susceptible to intimidation and the expectation of favors is an inadequate basis to support the legislative classification even under the rational relation test because it is based on speculation and mere possibilities. Appellants cite Rollins v. State, 354 So.2d 61 (Fla. 1978), for the proposition that a legislative classification may not be sustained based on mere judicial hypothesis.
While it is true that the courts may not supply an imaginary basis for upholding a statutory classification, they must sustain the act if any realistic and rational set of facts may be conceived to support it. In North Ridge General Hospital v. City of Oakland Park, 374 So.2d 461 (Fla. 1979), we stated the relevant considerations in determining equal protection claims:
The legislature has wide discretion in creating statutory classifications. There *1303 is a presumption in favor of the validity of a statute which treats some persons or things differently from others.
[I]f any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted will be presumed by the courts. The deference due to the legislative judgment in the matter will be observed in all cases where the court cannot say on its judicial knowledge that the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made.
374 So.2d at 464-65 (citations omitted).
In this case we believe that the legislature could rationally conclude that the potential for abuse by solicitors collecting funds for law enforcement organizations was greater than for solicitors for other non-charitable organizations. This potential for abuse is reflected in the testimony of Birchfield, who described a typical decal or sticker pitch used to solicit funds:
We are getting ready for the annual decals this year. It goes on your windshield. Can you help us out this year by purchasing the decals, only 25 per decal. You have two cars, that would be $50.00. These decals that you know-if you run a red light or traffic ticket or anything, it lets the boys know when the officer walks up that you are supporting them.
.....
... You also can use your decal pitch in with your ads, you know, selling your ads on the phone. Say, if Mr. Jones doesn't want to buy an ad, you come back, you know, we do send out the decals, put it on your door of your business. This decal lets the boys know patrolling your area that you do support them so they watch your business a little better than the shoe store next door, which tells us to go to hell, or something.
Birchfield also testified that this decal approach was used effectively only in connection with solicitation on behalf of law enforcement organizations:
Q: Did you give that sticker pitch on behalf of any other organization, other than law enforcement organizations?
A: No. That is what sells the sticker. Put it on your windshield. If the officer approaches your car, the officer knows you are supporting them and his organization.
.....
Q: In the event the fireman developed a sticker, you could then use the sticker pitch?
A: I guess you could come out and say, Mr. Jones we do have the stickers. The guys get to you here a little faster if they know you have a sticker. That would sound stupid. The police officer walks up to your car and he automatically sees it on your car.
Furthermore, the fact that the legislature chose not to deal with the possibility of abuse by solicitors for non-profit organizations does not invalidate part II of chapter 496 on equal protection grounds. The United States Supreme Court and this Court have repeatedly said that the legislature is free to regulate perceived evils one step at a time, addressing itself first to the phase of the problem which seems most acute to the legislative mind. See City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); Lasky v. State Farm Insurance, 296 So.2d 9 (Fla. 1974); Rodriguez v. Jones, 64 So.2d 278 (Fla. 1953). It does not necessarily follow that because the legislature regulated some non charitable organizations that it must regulate all such organizations. "So long as the classification is based upon practical differences, such as peculiar opportunities for abuse and oppression in a particular class singled out for regulation, it is not unconstitutional." State v. White, 194 So.2d 601, 603 (Fla. 1967) (quoting from 6 Fla.Jur., Constitutional Law, § 303 p. 529). We hold that part II of chapter 496 complies with the equal protection *1304 clauses of the state and federal constitutions.
Accordingly, we decide that the portion of the Law Enforcement Funds Act challenged by appellants does not violate the United States or Florida Constitutions. For the reasons expressed in this opinion we affirm the trial court below.
It is so ordered.
ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Ch. 78-124, Laws of Florida.
[2] Art. 1, § 2, Fla. Const.
[3] U.S.Const. Amend. XIV, § 1.
[4] U.S.Const. Amend. I; Art. I, § 4, Fla. Const.
[5] U.S.Const. Amend. XIV, § 1; Art. I, §§ 9 & 2, Fla. Const.
[6] Perry testified that although the State Fraternal Order of Police is a labor organization as well as a fraternal organization, his particular member lodge was strictly a fraternal association. The Dade County Police Benevolent Association, he said, was a separate labor organization which represented its members in collective bargaining.
[7] In associating together, at least part of the police organization's objectives include the promotion of that group's special interests. Perry testified that the police had not received a favorable press in Dade County and that the "Bolo" magazine was published primarily as a public relations tool "to convey the police side of the story" to the public.
[8] Perry explained that police department rules and regulations prohibit police themselves from directly soliciting the public for contributions.
[9] See § 496.11(8), Fla. Stat. (1979). The charitable solicitations act is repealed by chapter 76-168, section 3, as amended by chapter 77-457, section 1, effective July 1, 1982.
[10] Appellants find no fault with that portion of the trial court order holding unconstitutional subsections 496.31(8) and (9), Florida Statutes (1979). And since appellee has not filed a cross-appeal with respect to this point, we do not pass on the trial court's finding of unconstitutionality.